# Richmond.

FOLEY, &c., v. SHRIVER, &c.

MARCH 25th, 1886.

1. FEDERAL JURISDICTION—*Reservations.*—Exclusive jurisdiction is conferred upon the Federal government by the Constitution of the United States over land within a State acquired by its purchase with the consent of.the State's legislature. The reservation by the State that civil and criminal process of its courts may be served within the limits so acquired, is not incompatible with the exclusive jurisdiction of the Federal government, but is made to prevent such places from becoming sanctuaries for debtors and criminals. *U. S.* v. *Cornett,* 2 Mason, 60.
2. IDEM—*Idem—Case at bar.*—"The National Home for Disabled Volunteer Soldiers," situated within the limits of Elizabeth City county, in this State, upon land purchased by the United States with the consent of the State legislature, is a corporation created under the laws of congress, and is under the exclusive jurisdiction of the Federal government. Its officers are disbursing officers of the United States, and the funds in their hands as such, cannot be attached or garnisheed under process from a State court.

Appeal from decree of circuit court of Elizabeth City county, rendered August 8th, 1883, in a suit by foreign attachment in equity, wherein Daniel J. Foley, Bro. & Co. are plaintiffs, and Shriver Bros. and "The National Home for Disabled Volunteer Soldiers," a corporation under an act of congress, are the defendants. The decree was against the complainants, who obtained an appeal to this court.

Opinion states the case.

· *Harmanson & Heath*, for the appellants.

*Thomas Tabb*, for the appellees.

Lacy, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Elizabeth City county rendered on the 8th day of August, 1883.

On the 25th day of January, 1883, the appellants brought their suit, which is a foreign attachment in equity, against the appellees, who are non-residents of the State of Virginia, and against "The National Home for Disabled Volunteer Soldiers," a corporation incorporated by an act of congress. The object of the suit was to recover of the non-resident defendant a debt of $3,928.23, and to garnishee in the hands of the said "The National Home for Disabled Volunteer Soldiers" whatever money it owed to the non-resident defendant. The proceedings were had under the 11th sec., ch. 148, V. C. Affidavit having been made and filed, process was served on the secretary and governor of the said "The National Home for Disabled Volunteer Soldiers."

The defendant having made an assignment, the assignee appeared and pleaded to the jurisdiction of the court that the said "The National Home for Disabled Volunteers" did not reside within the said county, and that the court had no jurisdiction in the premises; and he answered and subsequently filed his petition in the cause.

The facts agreed were—first, that the defendant, "The National Home for Disabled Volunteer Soldiers," is indebted to Shriver in the sum of $1,485.55. Secondly, that the defendant, "The National Home for Disabled Volunteer Soldiers," acquired certain real estate which was situated in the county of Elizabeth City, in the State of Virginia, under an act of

the legislature of Virginia, approved July 11th, 1870, upon which its buildings and improvements now are, and upon which it now resides and does its business. Thirdly, that the said "The National Home for Disabled Volunteer Soldiers " is a corporation created by the congress of the United States of America, and is supported by appropriations made by the said congress. The cause was submitted to the judge of the circuit court for decree to be pronounced in vacation. The said judge of the said court being of opinion that the defendant, "The National Home for Disabled Volunteer Soldiers," is a non-resident corporation, and not within the jurisdiction of that court, abated the attachment and dismissed the bill. Whereupon the plaintiffs appealed.

The chief question for the consideration of this court is, whether the said "The National Home for Disabled Volunteer Soldiers " is subject to the jurisdiction of the circuit court of Elizabeth City county. The land upon which this corporation stands was purchased by the United States government, by the consent of the legislature of Virginia, under the authority of the seventeenth section of the eighth clause of the first article of the Constitution of the United states.

The act of cession, which is to be found at page 479, Acts of 1869–'70, declares in the preamble that the board of managers of the National Asylum for Disabled Soldiers desired, for stated reasons, to locate a branch of the said asylum within the borders of this State, and that the necessary expenditures could be made for buildings and other improvements by said board of managers only upon property under the control of. the national government. That the consent of the legislature was given; and such jurisdiction was ceded to the United States over this tract as is within the contemplation of the seventeenth clause of the eighth section of the first article of the Constitution of the United States, the State assuming such concur-

rent jurisdiction with the United States for the execution of process, &c., as may not be incompatible with the consent hereby given.

The eighth section, seventeenth clause, provides that congress shall have power "to exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten miles square) as may, by cession of particular States and the acceptance of congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings."

It is contended by the appellant that the State has reserved concurrent jurisdiction over this territory, and that the same is therefore within the jurisdiction of the circuit court of the State exercising jurisdiction over the county wherein the said territory is situated. The title to this property has been acquired by purchase by the United States with the consent of the legislature of Virginia, and such power of exclusive legislation is ceded by the State, as is provided for by the first article, eighth section of the Constitution of the United States. The State reserved such right to serve process, &c., as might be consistent with the exclusive jurisdiction of congress over the ceded territory.

" When the title is thus acquired by purchase by consent of the State, the Federal jurisdiction is exclusive of all State authority. This follows from the declaration of the constitution that congress shall have like authority over such places as it has over the district which is the seat of government; that is, the power of exclusive legislation in all cases whatsoever. Broader or clearer language could not be used to exclude all other authority than that of congress; and that no other authority can be exercised over them has been the uniform

opinion of Federal and State tribunals." *Fort Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. S. C. Rep., p. 532.

"The reservation which has usually accompanied the consent of the States that civil and criminal process of the State courts may be served in the places purchased, is not considered as interfering in any respect with the supremacy of the United States over them, but is admitted to prevent them from becoming an asylum for fugitives from justice." *Id.* And, indeed, the service of process is authorized by act of congress in such cases as the legislature of the State may not have provided for.   1 Stat. 426, ch. 40.

In the case of the *United States* v. *Cornett,* 2 Mason, 60, Mr. Justice Story held that the purchase of land by the United States for public purposes, within the limits of a State, did not, of itself, oust the jurisdiction or sovereignty of the State over the lands purchased; but that the purchase must be by consent of the legislature of the State, and then the jurisdiction of the United States under the constitution became exclusive.

The place, in that case drawn in question, had been purchased by the United States, with the consent of the State, to which was added the reservation, as to service of civil and criminal process within it.

Mr. Justice Story said, as to the question whether the reservation as to service of process made the jurisdiction concurrent with that of the state: "In its terms it certainly does not contain any reservation of concurrent jurisdiction or legislation. It provides only that civil and criminal process, issued under the authority of the State, which must, of course, be for acts done within and cognizable by the State, may be executed within the ceded lands, notwithstanding the cession. The whole apparent object is answered by considering the clause as meant to prevent these lands from becoming a sanctuary for fugitives from justice, for acts done within the acknowledged jurisdiction

of the State. Now there is nothing incompatible with the exclusive sovereignty or jurisdiction of one State, that it should permit another State in such cases to execute its process within its limits. And a cession of exclusive jurisdiction may well be made with a reservation of a right of this nature, which then operates only as a condition annexed to the cession, and as an agreement of the new sovereign to permit its free exercise as *quoad hoc*—his own process. This is the light in which clauses of this nature (which are very frequent in grants made by the States to the United States) have been received by this court on various occasions, on which the subject has been heretofore brought before it for consideration, and it is the same light in which it has also been received by a very learned State court. *Commonwealth* v. *Clary*, 8 Mass. 72. In our judgment it comports entirely with the apparent intention of the parties, and gives effect to acts which might otherwise be construed entirely nugatory."

In the case of the *Commonwealth* v. *Clary, supra,* the court held that "The territory on which the offence charged to have been committed is the territory of the United States, over which the congress have exclusive power of legislation; the assent of the Commonwealth to the purchase of this territory by the United States (lands in the town of Springfield, purchased with the consent of the State of Massachusetts, by the United States, for the purpose of erecting arsenals upon them,) had this condition annexed to it, that civil and criminal process might be served therein by the officers of the Commonwealth. This condition was made with a view to prevent the territory from becoming a sanctuary for debtors and criminals; and from the subsequent assent of the United States to the said condition, evidenced by their making the purchase, it results that the officers of the Commonwealth, in executing such process, act under the authority of the United States." See also the case *Mitchell* v. *Tibbitts,* 17 Pick. 298.

In 1841 the House of Representatives of Massachusetts requested of the justices of the Supreme Court of that State their opinion whether persons residing on the ceded lands in that State, under the first article, section eight, of the Constitution of the United States, were entitled to the benefit of the State common schools for their children in the towns where such lands were located, and the justices replied, that persons residing within said territory do not acquire the civil and political privileges, nor do they become subject to the civil duties and obligations of inhabitants of the towns within which such territory is situated; and accordingly they were of opinion that persons residing on such lands were not entitled to the benefits of the common schools for their children in the towns in which such lands were situated.   114 U. S. S. C. R. 536; 1 Met. 580.   See also *Sinks* v. *Reese*, 19 Ohio St. 306; 6 Opinions Attorney-General, 577; the New York Postoffice Site, 10 Opinions Attorney-General, 35.

From the foregoing cases it is clear that no other legislative power than that of congress can be exercised over lands within a State purchased by the United States with the consent of the State for one of the purposes designated, and that such consent, under the constitution, operates to exclude all other legislative authority.   If the United States has the right of exclusive legislation over the ceded lands, they also have the exclusive jurisdiction.   The right of exclusive legislation gives exclusive jurisdiction.   *United States* v. *Cornell, supra; People* v. *Godfrey*, 17 Johns. 225; 16 Opinions Attorney-General, 592. In this case, the State legislature having given the required consent, and the United States having purchased the land in question, the United States have acquired, under the Federal Constitution, exclusive jurisdiction over the ceded lands, and they are no longer a part of the State of Virginia and are not subject to the jurisdiction of the State courts.   Persons residing

there are not citizens of Virginia; the property situated there is not subject to the control or disposal of any State court, and the circuit court of Elizabeth City county is without jurisdiction within the said territory. The reservation in the act of cession of concurrent jurisdiction with the United States over the same piece or parcel of land, so that the courts, magistrates and officers of the State may take such cognizance, execute such process, and discharge such other legal functions within the same *as may not be* incompatible with the consent hereby given, is subject to the provisions of the first article and eighth section of the Federal Constitution—that is, as may not be incompatible with the *exclusive jurisdiction of the United States,* and which may operate to authorize the service by the officers of the State of the civil and criminal process of the State courts, with reference to acts done within the acknowledged territory of the State outside of the ceded lands.

The officers of the said "The National Home for Disabled Volunteer Soldiers" are disbursing officers of the United States government, and the money in their hands as such, appropriated by act of congress for public uses, is the money of the United States until applied to the designated ends, and cannot be reached by garnishee process in the hands of the public officials, nor subject to attachment. *Buchanan* v. *Alexander,* 4 Howard, 20; *Tracey* v. *Hornbucker,* 8 Bush, 336; *Buckley* v. *Eckhert,* 3 Penn. 368; *Chealey* v. *Brewer,* 7 Mass. 259.

We are of opinion that the circuit court of Elizabeth City county was without jurisdiction, and that it rightly so decided. There is no error in the decree appealed from, and the same must be affirmed.

DECREE AFFIRMED.