# Richmond

## W. G. PARKER AND JOSEPHINE B. PARKER V. S. H. INGE AND J. T. INGE, ET ALS.

January 14, 1932.

Present, All the Justices.

The opinion states the case.

*Thos. H. Howerton,* for the appellants.

*Allen & Jefferson,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellants, W. G. Parker and Josephine B. Parker, his wife, filed their bill of complaint, asking that a certain deed made to them, on February 12, 1926, by the appellees, S. H. Inge and J. T. Inge, her husband, conveying 505¾ acres of land, be rescinded and the purchase price paid and the notes given as evidence of a portion thereof be restored to them, by reason of certain false representations made to them by one W. J. Storey who negotiated the sale.

The trial court decided that the false representations alleged in the bill of complaint had been sustained by the proof; but further held that the appellants were not entitled to the relief prayed for because the appellant, W. G. Parker, had ratified the fraud. A decree was prepared and entered so holding and dismissing the bill, and this decree is now the subject of review by this court.

The outstanding facts over which there seems to be little or no dispute are as follows: The appellants, at the time the deed was executed and delivered to them, were residents of the State of North Carolina. The appellee, J. T. Inge,

being desirous of making sale of the land mentioned, negotiated with W. J. Storey for that purpose. He entered into a written agreement with Storey, whereby he agreed to sell the said land for the sum of $9,000.00 net, with the further understanding with Storey that his (Storey's) compensation would be any amount obtained for the said land in excess of the $9,000.00. Storey was an experienced real estate agent, having been engaged in that business for some thirty years and he was familiar with this tract of land. The appellants were strangers in that community and before the negotiations started had never seen the land.

Storey communicated with the appellant, W. G. Parker, and they viewed the land together. Parker asked Storey to identify the land and designate the boundaries. He also asked Storey how much frontage the land had on the road from Waverly to Homeville. In reply to these two inquiries Storey told Parker that the tract embraced a certain timber area comprising approximately 272 acres. He also told Parker that the said tract adjoined the road above mentioned and bordered on the same for something over a mile. Parker did not desire the tract for agricultural purposes but wanted it primarily for the timber. Under these representations made by Storey, Parker was induced to purchase the said tract and on February 12, 1926, the appellees, S. H. Inge and J. T. Inge, her husband, executed and delivered a deed to appellants conveying to them the said tract for the consideration of $10,000.00, of which the sum of $4,470.00 was paid by the appellants assuming and agreeing to discharge a certain Federal Farm Loan mortgage which had been previously placed on the land by the appellees. For the residue of the purchase price, negotiable notes were executed payable to the appellee, S. H. Inge. One of these notes, amounting to $300.00, was transferred by S. H. Inge to the Bank of Lunenburg, at Kenbridge, Virginia, and it became the holder of the same for value.

After the sale had been consummated the said tract remained in the possession of a tenant who had been placed there by the appellees, until January, 1927, at which time the premises were turned over to the appellants and they in turn placed them in the hands of their tenant.

In the fall of 1928, the appellant, Parker, posted the timbered lands, and sometime in December, 1928, a Mr. Birdsong went to North Carolina and notified Josephine B. Parker the other appellant that the timbered lands which had been posted by W. G. Parker, her husband, belonged to him (Birdsong) and two other parties. Sometime in January, 1929, Parker called on the appellee, J. T. Inge, in Kenbridge and told him of the report which Birdsong had made to Mrs. Parker, in North Carolina, to which Inge replied: "I guess you have the number of acres." Shortly thereafter on the same day he and Inge went to the said bank and Parker paid the said note of $300.00.

During the month of January, 1929, Parker paid an insurance premium amounting to $20.00 for a policy of insurance which had been issued, insuring the dwelling on the premises. On or about the 1st of February, 1929, after having been notified by the Federal Land Bank the second time of the maturity of an installment under its mortgage and at its second request, Parker paid the said Land Bank on account of the mortgage which he and his wife had assumed in the deed of February 12, 1926, an installment of $175.00.

The two representations made by Storey to the appellant, Parker, namely: (a) That the said timbered lands were embraced in his purchase, and (b) that the land fronted on the road mentioned for something like a mile, were untrue. The timbered lands belonged to three other parties and therefore the appellants acquired no title to them under their deed of February 12, 1926. The frontage on the road mentioned was thus reduced from a mile to a quarter of a mile.

In March, 1929, the appellants filed their bill of complaint asking for a rescission of the said deed on account of the said false representations made by Storey. The Federal Land Bank was made a party defendant, but after filing its answer disclaiming any interest in the subject matter of the litigation it was dismissed.

The other appellees filed their answer denying all charges of fraud and misrepresentation and asserting as a defense that they were not responsible for the misrepresentations made by Storey; that in making said misrepresentations Storey was not acting as their agent but was acting under a contract of option and if the appellees were responsible for the said misrepresentations they had been ratified by the appellant, W. G. Parker.

By agreement of the parties by counsel the evidence was heard in open court, and the trial court in its opinion decided that Storey was the agent of the appellees; that he made false representations to Parker regarding the timbered land and the road frontage, which said representations were material and induced him to make the purchase; that the appellees were responsible for the conduct of their agent, Storey, in this regard, but, inasmuch as Parker had paid the installment of $175.00 to the Federal Land Bank under its mortgage after he had knowledge of the fraud, that he had thereby ratified the fraud of the appellees' agent, Storey, and had elected to affirm the transaction. The trial court further decided that neither the payment of the $300.00 note to the Bank of Lunenburg nor the payment of the insurance premium constituted a ratification.

The evidence abundantly sustains the fraudulent representations alleged in the bill. Storey admits in his testimony that he misrepresented the timber lands as being embraced in the tract and that he misrepresented the extent of the road frontage, and counsel for the appellees in their brief admit that Storey misrepresented the boundary lines to

Parker in this language: "Storey in showing the land to the appellants was mistaken as to the boundaries and showed to the appellants certain lands which were not included in the boundaries described in the deed from the appellees."

The undisputed evidence regarding the depreciation in the value of the tract by reason of excluding the 272 acres of timbered land and by reason of the fact that the road frontage has been reduced from one mile to one-fourth mile was estimated at from one-third to one-half of the value of the whole tract which indicates that the appellants, if the transaction is upheld, will suffer a substantial loss.

As previously stated the trial court in its opinion held that Storey was the agent of the appellees and that they were responsible for his representations. To this holding the appellees have assigned cross-error, contending that Storey was operating under a contract of option rather than under an agreement of agency. In its opinion the trial court disposed of this question in this way:

"Mr. Storey describes his relation or association with Mr. Inge as having originated under an instrument which he denominates an option. That option is not before us. We have no copy of it. We do not know what its terms were, except as reproduced by the memory of Mr. Storey. The complainant here has never seen it, nor has had any occasion to see it. Mr. Storey testified that he was to sell the property for a certain sum to accrue, at all events, to Mr. Inge; that he, himself, was the optionee; I think the sum to accrue to Mr. Inge was $9,000.00; the balance was to go to him, Storey. He testified that he was a real estate agent, and was 'handling' this property. And Mr. Inge also, according to his testimony, either directly or indirectly, stated that Mr. Storey was 'handling' it for him." * * *

And further: "Was Mr. Storey in the premises acting as an agent? The authorities produced here discussing the

nature of an option announced the doctrine that the question is one to be determined with reference to the substance, rather than to the form, of the contract. It does not make any difference in what form the contract of agency is cast. The real question here is: Was the relation between Inge and Storey that of principal and agent, or was Mr. Storey merely an optionee with the implied right to transfer his option to somebody else? In the first place, Mr. Storey never exercised the option and himself got the property. It was never conveyed to him. I do not mean to say that the optionee cannot say to the petitioner, 'I want you to convey the property to such a party, or make the deed to so and so.' Nevertheless, it is a circumstance of some significance, in the first place, that the so called optionee never got the property, but that Mr. Parker did get it. Mr. Storey stood aside; the title did not pass through him. That is at least one definite circumstance. I think the doctrine cited by Mr. Allen is not far amiss—quoting James on Option Contracts, section 114, in which the author says:

■ " 'A writing empowering and authorizing a real estate broker to sell land for a certain sum and binding the broker to accept, as his remuneration, any amount which he might obtain in excess of that sum is a contract of agency and not an option to the broker to purchase the land.'

"I think that is very nearly the case here. But apart from all that, to take all the circumstances of the case, to take Mr. Inge's testimony and Mr. Parker's testimony, in my opinion, it is pretty clear that Mr. Storey was the agent of Mr. Inge in this transaction. So, therefore, if these misrepresentations were in fact made by Storey and if they fall within the denunciation of the law, then Mr. Inge would necessarily be responsible for them."

In the reasoning and conclusion of the trial court on this question we concur and deem it unnecessary to pursue it further.

The remaining question to be decided is whether or not the appellant, W. G. Parker, ratified the fraud which had been perpetrated upon him.

The principles of ratification in cases similar to the present one have frequently been defined and applied by this court. Without attempting to restate them or to cite all the Virginia cases dealing with the subject generally, it may be said that a person will not be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive. It must plainly appear that he knows his rights and intends to waive them. When it is clearly shown that the original transaction is infected with fraud, or it is admitted, as is the case here, the affirmance of it is so inconsistent with justice and so likely to be accompanied with imposition that courts should not allow it to stand except upon clear evidence. The burden of proving that a person has full knowledge of his rights and that he intends to waive them is upon the party who asserts ratification as a defense. *Wilson* v. *Carpenter's Adm'r*, 91 Va. 192, 21 S. E. 243, 50 Am. St. Rep. 824; *White* v. *American National Life Insurance Co.*, 115 Va. 305, 78 S. E. 582; *Fitzgerald* v. *Frankel*, 109 Va. 609, 64 S. E. 941.

The payment of the $300.00 note by Parker to the Bank of Lunenburg and the payment of the $20.00 insurance premium do not constitute an affirmance of the transaction. They were Parker's personal obligations and he was bound to discharge them regardless of his repudiation or affirmance of the contract.

The payment by Parker of the $175.00 installment due under the Federal Farm Loan Bank mortgage was made a little more than a month after he had knowledge of the false representations which had been made to him. The Federal Land Bank had on two occasions sent him notices and requests for payment. If he had continued in default

no doubt the bank would have instituted suit against him to foreclose its mortgage. If this had been done, it is likely that the appellants' rights would have been prejudiced and they might have suffered further loss. Under the circumstances, they were justified in making the payment to the Federal Land Bank and protecting the property from a probable foreclosure sale under the mortgage. This payment as well as the payment of the insurance premium and the payment of the $300.00 note held by the Bank of Lunenburg are circumstances just as consistent with an intent to repudiate the contract as with an intent to affirm it. The fact that the present suit was instituted for a rescission of the deed in so short a time after the payments were made, strongly tends to negative any intention on the part of the appellants to affirm the transaction. Our conclusion is that the fraud relied upon in this case has not been ratified or waived.

Each case of this nature must be decided in the light of the peculiar facts shown. The appellees have cited numerous authorities on this subject but upon an examination of them they may be distinguished upon the facts.

In *Max Meadows Land & Imp. Co.* v. *Brady*, 92 Va. 71, 22 S. E. 845, the principal case relied upon, it will be noted that more than a year elapsed after the fraud was discovered before the injured party made any attempt to repudiate the transaction. In the meantime, with full knowledge of the fraud, he paid to the wrongdoer an instalment of one-third of the purchase price.

In the present case only two months elapsed between the discovery of the fraud and the institution of this suit. After the discovery of the fraud no payment was made by the appellants to the appellees.

In the case of *Hudson* v. *Waugh*, 93 Va. 518, 25 S. E. 530, 532, there was an unreasonable delay and the court in that case held that fraud had not been sufficiently alleged and

had not been proven. And in addition to this the situation of the parties had materially changed. The principal reason why the relief was denied as given by the court was:

"It is difficult to resist the impression that the decline in the value of the property, as shown by the constantly diminishing rents, constituted the motive for demanding a rescission of this contract. Had the rents derived continued to be sufficient, and more than sufficient, to meet the monthly accruing instalments, it is probable that this controversy would never have arisen. It was only when the rents had fallen to $43.00 per month, $8.00 per month less than the demand of the building association for the same period, that the appellee determined to repudiate the contract, and instituted proceedings for its rescission. He had no right thus to delay and throw upon the appellant the burden resulting from a depreciation of the property. Had he acted promptly, and disaffirmed the contract as soon as he discovered the fraud or mistake of which he claims to have been a victim, it may be that the appellant could have averted, or, at least, have diminished the loss attending its repudiation."

In *Campbell* v. *Building & Loan Association*, 98 Va. 729, 37 S. E. 350, the injured party made nine payments to the wrongdoer on the stock after he had knowledge of the fraud.

In the present case there was no unreasonable delay in instituting the suit, and the false representations have been proven as well as admitted. The rights of third parties have not intervened and no laches has been proven.

The decree is reversed and the cause remanded to the trial court for the entry of a decree not in conflict with the views here expressed, granting the appellants the relief they have prayed for in their bill of complaint.

*Reversed.*