# Richmond

NELSON BUTTERY v. WILLIAM A. ROBBINS.

April 21, 1941.

Record No. 2351.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*Duke & Duke* and *Walsh & Waddell,* for the plaintiff in error.

*E. V. Walker* and *Downing L. Smith,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In June, 1939, William A. Robbins, as a guest of Nelson Buttery, rode with Buttery in Buttery's automobile. As they drove along the Skyline Drive in the Shenandoah National Park and in what had been Madison county, they suffered an accident. Robbins was hurt and sought compensation in damages from his host and has secured a judgment against him for $1,000. From that judgment Buttery appealed to this court and has been awarded a writ of error.

Notice was served upon the defendant, and on it is this return:

"Executed on the 15 day of Dec. 1939, within the county of Madison, by delivering a true copy of the within notice of motion, in person to Nelson *Butter.*

T. H. LILLARD,
Sheriff of Madison county, Va."

On January 22, 1940, the court, in an order of that day, certifies what then took place:

"On the 1st day of January, 1940, the plaintiff, by counsel, appeared and moved the court to set this case for trial and likewise came the defendant, by counsel, appearing specially, and moved the court to permit the sheriff to amend the return of process on the defendant

so as to show the same was served in the Shenandoah National Park and upon objection by counsel for the plaintiff and argument by counsel, said motion was overruled and denied.

"And thereupon, counsel for the defendant moved the court to quash said process and notice of motion because said process failed to show that the same was served within the said Park, and upon objection by counsel for the plaintiff and argument of counsel, said motion to quash was overruled and denied."

■ The sheriff should have been permitted to amend his return in conformity with the facts.

■ "* * * It is the fact of service which gives the court jurisdiction. The return is merely the evidence of the jurisdictional fact. If it fails to show the *facts* as to the service it may be amended to show them, but if there has been no service in fact jurisdiction fails." *International Brotherhood of Boiler Makers, etc.* v. *Wood,* 162 Va. 517, 175 S. E. 45. *Alsop Motor Corp.* v. *Barker,* 138 Va. 598, 123 S. E. 350. But courts are extremely liberal in allowing amendments of returns. Burks' Pleading & Practice, 3 Ed., secs. 45 and 46; *Federal Land Bank of Baltimore* v. *Birchfield,* 173 Va. 200, 3 S. E. (2d) 405.

■ Not only ought the facts to appear, but there is this added possibility: The sheriff may be sued because of his failure to state the facts. It is perfectly true that a sheriff may stand by his return, which in turn must stand if the sheriff so elects. A return unamended stands and can not be attacked collaterally. Burks' Pleading & Practice, *supra,* sec. 45. *Preston* v. *Kindrick,* 94 Va. 760, 27 S. E. 588, 64 Am. St. Rep. 777. The motion here was not that he be ordered to make an amendment, but that he be permitted to do so. He was denied that privilege.

■ This error of the court may have been harmless and it may have been hurtful. If that part of Madison county taken into the Shenandoah National Park continued to be a part of Madison county for the purposes

of this action, the error was harmless; if for those purposes it was no longer a part of that county, then the error was hurtful.

After this motion was denied a plea in abatement was filed, which was rejected for reasons which it is not now necessary for us to consider.

In *Hilton & Allen* v. *Consumers' Can Co.*, 103 Va. 255, 48 S. E. 899, the court tells us when a motion to dismiss is sufficient and when a plea in abatement is necessary. ▉ " '* * * Where the matter, on which the defendant relies to abate the suit, is a fact not appearing upon the record, or the return of the officer, it must be pleaded in abatement, so as to give the other party an opportunity to traverse and try it. But where all the facts upon which the claim to have the process abated is founded appear by the record, including the return of the officer, of which the court will take notice without plea, there the action may be dismissed on motion.' " Citing *Nye* v. *Liscombe*, 21 Pick. (38 Mass.) 263. *International Brotherhood of Boiler Makers, etc.* v. *Wood, supra.*

▉ ▉ The court will take judicial notice of the fact set out in the motion for judgment that the Skyline Drive is in the Shenandoah National Park. That is a matter of common knowledge, known to everybody else. We should not hold that we alone are in ignorance of that fact. The error contended for, if it be error, is apparent upon the face of the record.

In the petition for a writ of error is this statement:

"At the return day defendant filed a plea in abatement to the jurisdiction of the court and moved to dismiss and quash the return.

"The plaintiff moved to strike the plea and resisted the motions. The sheriff was examined and testified that he had served the notice of motion within the boundaries of the Shenandoah National Park which he considered still a part of Madison county.

"The court sustained the motion to strike the plea in

abatement and overruled the motions to dismiss and quash the return.''

This statement is inaccurate in one particular: The motion to dismiss and quash was heard before the plea in abatement was tendered. But it does show that this motion to dismiss and quash was fully heard.

What is now the Shenandoah National Park is a body of land lying along the Blue Ridge Mountains north of Rockfish Gap; that land, to be used for Park purposes, was ceded by Virginia to the Federal Government and by it accepted.

The situation here, in some respects, differs from that provided for in Article 1, section 8, subsection 17, of the Constitution of the United States, where provision is made for the Erection of Forts, etc. There jurisdiction is like that which obtained in the District of Columbia. When a State makes to the United States a gift of land for park purposes, it may attach such conditions to the gift as to it seems necessary and proper; and the United States, on its part, may accept such lands with conditions attached or reject the gift. But where national interests are involved, the taking may be as absolute as seems desirable. Virginia can not impose terms where maneuver grounds are taken over by the Army.

In *James Stewart & Co.* v. *Sadrakula,* 309 U. S. 94, 60 S. Ct. 431, 84 L. Ed. 596, decided January 29, 1940, is this statement:

''It is now settled that the jurisdiction acquired from a State by the United States whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments. The Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred.

"This assures that no area however small will be left without a developed legal system for private rights."

What conditions are attached to the gift of these Park lands? They are set out in the Acts of the General Assembly and in those of Congress.

By an Act of the General Assembly, 1928, p. 983, chapter 371, provision is made for the transfer of these Shenandoah National Park lands to the United States. The conditions under which this transfer was to be made are set out in section 7 of that Act, which reads:

"The United States of America is authorized to acquire by deed or conveyance pursuant to this act land or lands within the area specified and described in sections three (3) and four (4) of this act, and exclusive jurisdiction shall be and the same is hereby ceded to the United States of America over and within all the territory in the State of Virginia which is included within the area described in sections three (3) and four (4) of this act, and deeded and conveyed to it, pursuant to the terms and conditions of section six (6) of this act; saving, however, to the State of Virginia the right to serve civil or criminal process within the limits of the land or lands thus deeded or conveyed, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crime committed in said State outside of said land or lands, and on account of rights acquired, obligations incurred, or crimes committed, on or within said lands, prior to the date of the giving or service of notice as hereinafter provided, of the assumption of police jurisdiction over such land or lands by the United States; and, saving further, to the said State, the right to tax sales of gasoline and other motor vehicle fuels and oil for use in motor vehicles, and to tax persons and corporations, their franchises and properties, on land or lands deeded or conveyed as aforesaid; and saving, also, to persons residing in or on any of the land or lands deeded or conveyed as aforesaid the right to vote at all elections within the county in which said land or lands

are located, upon like terms and conditions and to the same extent as they would be entitled to vote in such county had not such lands been deeded or conveyed, as aforesaid, to the United States of America; provided, nevertheless, that such jurisdiction shall not vest in the United States of America unless and until it, through the proper officer or officers, notifies the governor and through him the State of Virginia, that the United States of America assumes police jurisdiction over the land or lands thus deeded and conveyed. Power is hereby expressly conferred on the congress of the United States to enact such laws as it may deem necessary for the acquisition of the said lands within the area prescribed in sections three (3) and four (4) of this act, and further, to enact such laws and to make and provide for the making of such rules and regulations, of both civil and criminal nature, and to provide punishment therefor, as in its judgment may be proper in the exercise of the jurisdiction hereby conveyed.''

Jurisdiction was accepted by an Act of Congress approved August 19, 1937 (50 St. 700), sec. 1 of which provides (U. S. C. A., Title 16, sec. 403c-1):

''The Secretary of the Interior is hereby directed to give notice to the State of Virginia through its Governor, as contemplated by the Act of the General Assembly of the State of Virginia approved March 28, 1928, that the United States assumes police jurisdiction over lands lying in the State of Virginia and included within the Shenandoah National Park, title to and exclusive jurisdiction over said lands having been conveyed and ceded under and by authority of said Act and accepted by the Secretary of the Interior, saving, however, to the State of Virginia the right to serve civil or criminal process within the limits of the aforesaid park in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said State outside of said park; and saving further to the said State the right to tax persons and corporations, their franchises and

property on the lands included in said park; and saving also to the persons residing in said park now, or hereafter, the right to vote at all elections held within the county or counties in which said park is situated; and saving further to the said State the right to tax sales of gasoline and other motor vehicle fuels and oil for use in motor vehicles. The Secretary is further directed to give like notice as to lands conveyed after August 19, 1937, to the United States under like authority at such time or times as he shall determine to be consistent with the interests of the United States. All the laws applicable to places under sole and exclusive jurisdiction of the United States shall have force and effect in said park. All fugitives from justice taking refuge in said park shall be subject to the same laws as refugees from justice found in the State of Virginia. (Aug. 19, 1937, c. 703, sec. 1, 50 Stat. 700.)''

And sec. 2 provides:

''Said Park shall constitute a part of the United States judicial district for the western district of Virginia, and the district court of the United States in and for said district shall have jurisdiction of all offenses committed within the boundaries of said park. (Aug. 19, 1937, c. 703, sec. 2, 50 Stat. 701.)''

Rights become fixed as of the date of acceptance and are both substantive and procedural—substantive, in that Congress is given exclusive jurisdiction, and procedural, in that the State has reserved in designated instances the right to serve civil and criminal process within the limits of the Park; ''* * * saving, however, to the State of Virginia the right to serve civil or criminal process within the limits of the land or lands thus deeded or conveyed, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crime committed in said State outside of said land or lands, and on account of rights acquired, obligations incurred, or crimes committed, on or within said lands, prior to the date of the giving or service of notice as hereinafter pro-

vided, of the assumption of police·jurisdiction over such land or lands by the United States; * * * ."

It is true that an action for damages on account of personal injuries is transitory and may be prosecuted in any trial court of Virginia having general jurisdiction. A claim for damages arising out of an automobile accident in the District of Columbia might be heard and determined in the Circuit Court of Surry county, provided the defendant appeared and consented to a hearing upon its merits. He could not be brought there by any court process. The only State court which had unquestioned jurisdiction was the Circuit Court of Page county, where the defendant was and is domiciled, although any State court of general jurisdiction may proceed to judgment if the defendant chanced to be found within its territory and there served with process. *Richardson* v. *Richardson*, 8 Va. Law Reg. (N. S.), p. 257.

"Exclusive jurisdiction" does not in all circumstances mean all jurisdiction. State laws may linger over and are sometimes invoked and applied in the protection of private rights. Whenever the annexed territory is without a developed Federal legal system affording complete relief, resort may be had to State laws in effect at the time of cession.

Most Federal cases deal with substantive rights.

In *Chicago, Rock Island & Pacific Ry. Co.* v. *McGlinn*, 114 U. S. 542, 5 S. Ct. 1005, 29 L. Ed. 270, a Kansas statute provided for recovery for injury to live stock on a railway right of way. It was held that this statute was carried over into the law governing the reservation. The court said:

"Upon the second question the contention of the railroad company is that the act of Kansas became inoperative within the Reservation upon the cession to the United States of exclusive jurisdiction over it. We are clear that this contention cannot be maintained. It is a general rule of public law, recognized and acted upon by the United States, that whenever political jurisdiction

and legislative power over any territory are transferred from one nation or sovereign to another, the municipal laws of the country, that is, laws which are intended for the protection of private rights, continue in force until abrogated or changed by the new government or sovereign. * * * ''

In *Arlington Hotel Co.* v. *Fant,* 278 U. S. 439, 49 S. Ct. 227, 73 L. Ed. 447, it was held that a statute passed after cession of the reservations, for the relief of innkeepers, did not apply, but that the common law liability, which was administered in Arkansas before the cession, prevailed.

In *Collins* v. *Yosemite Park & Curry Co.,* 304 U. S. 518, 58 S. Ct. 1009, 82 L. Ed. 1502; 20 F. Supp. 1009, a statute, in ceding park lands to the government, reserved to that State ''the rights to fix and collect license fees for fishing in said park.'' This one definite reservation of the right to collect license fees was held to preclude their assessment in any other case, but the State was permitted to collect excise taxes, and in distinguishing them said:

''A different conclusion obtains, however, with respect to the excise tax provision of the Alcoholic Beverage Control Act, laying a tax, at a specified rate per unit sold.''

But it took occasion to reaffirm this well established rule:

''The States of the Union and the National Government may make mutually satisfactory arrangements as to the jurisdiction of territory within their borders and thus in a most effective way, co-operatively adjust problems flowing from our dual system of government.''

In reaching this conclusion the rule of *expressio unius* was invoked.

In *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155, West Virginia reserved to herself concurrent jurisdiction. An occupation tax upon

a contractor doing work for the National Government on a government reservation was sustained.

In *James Stewart & Co.* v. *Sadrakula, supra,* it appears that Sadrakula was killed during the erection of a Federal post office as the result of the failure of a contractor to plank over steel beams, a precaution required by the Labor Law of New York. A recovery by his personal representative was sustained by the New York Court of Appeals and its finding was affirmed by the Supreme Court, which held that the New York statute continued to operate until that matter covered by it had been adequately provided for by an act of Congress.

██ But that is not the situation here. The Shenandoah National Park, certainly so far as automobile accidents are concerned, is not a "no man's land," for a developed legal system designed to protect private rights is at hand and may be invoked.

Automobile accidents come every day before trial Federal courts, and in Virginia they apply Virginia law. *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188; *Mayer* v. *Puryear,* 115 F. (2d) 675. That is to say, the rights of guests and hosts are the same, whether they be tried by our State or Federal courts.

██ If the sheriff had no right to serve this particular process in the park, his return means no more than would a like return made by a sheriff of Highland county. It seems to be conceded that service was had within that portion of Madison county which was a part of it before there was any Shenandoah National Park. That fact was not questioned in argument and is not questioned in briefs. And so we are called upon to deal not with an issue of fact but with one of law. It would be lost motion to remand this case that a fact might be established which is already a foregone conclusion.

Reservations noted as to service of process are not unique. They appear in the California statute and upon their face need no construction. *Collins* v. *Yosemite Park*

*& Curry Co., supra; Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264, Laws of Kansas, 1875, p. 295.

West Virginia, not incautious of the future, seems to have made adequate provisions:

"The State of West Virginia reserves the right to execute process, civil or criminal, within the limits of any lot or parcel of land heretofore or hereafter acquired by the United States as aforesaid, and such other jurisdiction and authority over the same as is not inconsistent with the jurisdiction ceded to the United States by virtue of such acquisition." *James* v. *Dravo Contracting Co., supra.*

Virginia, apparently aware of the fact that something had been omitted, by Act of the General Assembly, 1940, p. 725, provided:

"(c) The Commonwealth of Virginia reserves the right and shall have jurisdiction to serve civil process within the limits of said park in any suits properly instituted in any of the courts of the Commonwealth of Virginia, and to serve criminal process within said limits in any suits or prosecutions for or on account of crimes committed in said Commonwealth but outside of said park. * * *

"(g) The courts of the Commonwealth of Virginia shall have concurrent jursdiction with the courts of the United States of all civil causes of action arising on said lands to the same extent as if the cause of action had arisen in the county or city in which the land lies outside the park area, and the State officers shall have jurisdiction to enforce on said lands the judgments of said State courts and the collection of taxes by appropriate process."

Its title reads:

"An Act to provide for the respective jurisdictions and powers of the United States and the Commonwealth of Virginia over lands in the Shenandoah National Park acquired by the United States, the effect of which is to

modify the jurisdiction ceded to the United States over certain parts of said lands as set forth in section 7 of Chapter 371 of the Acts of 1928, and over other parts as set forth in section 19-a of the Code of Virginia.''

■ It came too late and is in itself a legislative confession of *casus omissus* in the conditions of the transfer.

Congress may grant to Virginia the rights here asserted but Virginia cannot demand it. *Murray* v. *Joe Gerrick & Co.*, 291 U. S. 315, 54 S. Ct. 432, 78 L. Ed. 821.

Virginia has not always been as liberal in its grants. It once owned part of the land composing the Norfolk Navy Yard, and by an Act of the Assembly dated January 25, 1800, the Governor was authorized to convey to the United States ''all the jurisdiction which this Commonwealth possesses over the public lands formerly known and called by the name of Gosport,'' reserving only the right of the officers of the State to execute process within the jurisdiction authorized to be ceded. This was reaffirmed by an Act of the Assembly of date February 27, 1833, evidenced by deed from Governor Littleton W. Tazewell of date April 1, 1835. See *Western Union Telegraph Co.* v. *Chiles*, 214 U. S. 274, 29 S. Ct. 613, 53 L. Ed. 994.

In the Acts of 1869-'70, p. 479, an act which reserved to the State concurrent jurisdiction in the execution of processes on land conveyed to the Federal Government was upheld, although in other respects the Federal Government took over exclusive jurisdiction. *Foley* v. *Shriver,* 81 Va. 568.

In *Norfolk & P. B. L. R. Co.* v. *Parker,* 152 Va. 484, 147 S. E. 461, jurisdiction in an action which originated at an Army base was sustained; but in the consent of Virginia to its acquisition is this reservation as to exclusive jurisdiction: Such jurisdiction was granted to the Federal Government ''for all purposes herein provided except the service upon such sites of all civil and criminal processes of the courts of this State, which right

of service of said processes within the bounds of said lands and sites is reserved to this State."

It is further said that due notice was not given of the purpose to present to the judge bills of exception. Notice was given to counsel on the 17th of May that these bills were to be presented to the judge at Stanardsville on the 20th of that month. All of these gentlemen live in Charlottesville. Stanardsville is in the adjoining county of Greene. In these days of good roads this notice was sufficient.

Many other matters have been presented to us, but for reasons stated their consideration is not here necessary.

The judgment appealed from should be reversed and this case dismissed.

*Reversed and final judgment.*