# Richmond

## Hercules Powder Company, A Corporation v. W. A. Ruben.

January 10, 1949.

Record No. 3400.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

*Howard C. Gilmer, Jr.* and *Robert A. Fulwiler, Jr.*, for the plaintiff in error.

*Ted Dalton,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

W. A. Ruben instituted an action at law against Hercules Powder Company, a corporation, for the recovery of damages in the sum of $350 for an alleged breach of contract of employment. Service of the notice of motion was made on the Secretary of the Commonwealth, the statutory agent of the Hercules Powder Company, in the city of Richmond. On the return date of the notice of motion the Hercules Powder Company appeared specially and filed a verified plea in abatement challenging the territorial jurisdiction of the Circuit Court of Pulaski county to try the action. The court rejected the plea in abatement and the judgment of which complaint is now made followed.

The main and determinative assignment of error is directed to the action of the court in rejecting the plea in abatement. It is the contention of the plaintiff-in-error that the Circuit Court of Pulaski county was without power to hear the action because it did not arise in Pulaski county but arose on a Federal reservation which was not a part of the county.

There is no substantial dispute about the facts. The Hercules Powder Company is a corporation organized under the laws of the State of Delaware, with its principal office in the city of Wilmington, Delaware. It had no office and no chief officer in Pulaski county, and it had no estate or debts due and owing it in Pulaski county. The Secretary of the Commonwealth had been duly appointed the statutory agent upon whom service of process might be had. The New River ordnance plant was operated by the plaintiff-in-error for the United States of America on a cost-plus-a-

fixed-fee contract. The cost of all labor was reimbursed by the United States.

The United States constructed the New River ordnance plant on lands acquired which were at the time within the geographical limits of the county of Pulaski. However, the United States was not willing to accept the jurisdiction and powers ceded to it by section 19 of the Virginia Code of 1942 (Michie), (Acts 1940, p. 754). It desired to exercise exclusive jurisdiction over this territory rather than to exercise concurrent jurisdiction as provided for in that section. The United States thereupon made application in writing to the Commonwealth of Virginia for the purpose of acquiring exclusive jurisdiction in this territory, and the Governor and Attorney General of the Commonwealth, respectively, under the authority of Acts of Assembly, 1940, chapter 422, page 761 (Code, sec. 19e), ceded to the United States exclusive jurisdiction over those certain parcels of land comprising the plant site, reserving, however, the right to serve civil and criminal process within the limits of the site. This was done by a proper deed which was duly accepted by the Secretary or War on behalf of the United States, and it was duly recorded in the clerk's office of the Circuit court of Pulaski county.

Ruben was an employee of the Hercules Powder Company at the New River ordnance plant. At the end of hostilities the plant was closed and Ruben's employment was terminated. At that time there existed a system in operation by the Hercules Powder Company and its employees under which provision was made for dismissal pay to those employees who were eligible upon certain terms and conditions. Ruben was not paid this dismissal pay which amounted to $350, and he therefore instituted this action.

After the plea in abatement had been rejected, the Hercules Powder Company made no other defense to the action and the judgment in favor of Ruben was accordingly entered.

The material part of the deed executed by the Common-

wealth of Virginia ceding the lands in question to the United States is as follows:

"WHEREAS, with respect to such lands, the United States does not desire to accept any of the jurisdiction and powers ceded by sections 19, 19a, or 19b, of the Code of Virginia, but desires to acquire exclusive jurisdiction over the same; and

"WHEREAS, under the provisions of the Code of Virginia as amended by the Act of the General Assembly of Virginia, approved April 1, 1940, (Acts of Assembly, 1940, c. 422, p. 761), the Governor and Attorney General of the Commonwealth of Virginia, upon application made to them in writing on behalf of the United States for that purpose, are authorized on the part of the Commonwealth to cede to the United States jurisdiction over such lands; and

"WHEREAS, application has been made in writing on behalf of the United States of America for such cession,

"NOW, THEREFORE, WE, Colgate W. Darden, Jr., and Abram P. Staples, as Governor and Attorney General respectively, of the Commonwealth of Virginia, in the name of and on behalf of the Commonwealth of Virginia, and in accordance with laws of said Commonwealth, do hereby cede unto the United States of America *exclusive jurisdiction* over those parcels of land comprising the site of the New River ordnance plant, situate in Pulaski County, Virginia, and more particularly described as follows:"

We think that the plea in abatement was in proper form and that it should have been sustained by the trial court for the reason that the cause of action, if any, did not arise in Pulaski county but arose in a Federal reservation over which the United States had exclusive jurisdiction.

The plea measured up to all of the requirements of the law. It averred that the Hercules Powder Company did not have its principal office in Pulaski county; that it did not have a president or other chief officer residing there; that its principal office was in the city of Wilmington, Delaware; and that its president or chief officer resided in the county of New Castle, Delaware. It further averred that it had

appointed the Secretary of the Commonwealth of Virginia as its statutory agent whose place of residence was in the city of Richmond; that it had no estate or debts owing to it in the county of Pulaski; and that the cause of action and no part thereof arose in Pulaski county, but if any cause of action arose it arose on the plant site of the New River ordnance plant which was embraced within the deed from the Commonwealth of Virginia ceding exclusive jurisdiction of this particular territory to the United States. Each and every ground of territorial jurisdiction in the Circuit Court of Pulaski county was explicitly denied in the plea and we think that it was sufficient.

The question of whether or not the Commonwealth of Virginia has any jurisdiction over territory of this kind has been settled by our decisions. See *Foley* v. *Shriver*, 81 Va. 568, *Bank of Phoebus* v. *Byrum*, 110 Va. 708, 67 S. E. 349, 135 Am. St. Rep. 953, 27 L. R. A. (N. S.) 436, and *Buttery* v. *Robbins*, 177 Va. 368, 14 S. E. (2d) 544.

Provision is made for the acquisition of lands by the United States such as those now in question by article 1, section 8, clause 17, of the Constitution of the United States.

The fact that the Commonwealth of Virginia retained in the deed concurrent jurisdiction with the United States to serve civil and criminal process in no way lessens the exclusive jurisdiction of the United States in the territory in question.

Code, section 19e, clause 5, (Acts 1940, c. 422, p. 761), provides: "When said deed has been executed and acknowledged on behalf of the Commonwealth and the United States and admitted to record as hereinbefore set forth, the same shall have the effect of ceding to and vesting in the United States the jurisdiction and powers therein provided for, and none others."

In *Foley* v. *Shriver*, *supra*, the question presented involved an attachment of funds in the hands of an officer of the National Home for Disabled Volunteer Soldiers. The home was situated within the geographical limits of Elizabeth City county, Virginia. The land for the home had been pur-

chased by the United States and it had exclusive jurisdiction over the reservation by virtue of the authority granted by the General Assembly of Virginia and by virtue of the authority of the Federal Constitution. However, reservation by the State was made for the purpose of serving civil and criminal process on the site. The court held that the site of the home was under the exclusive jurisdiction of the United States and that the Commonwealth of Virginia had no jurisdiction to entertain an attachment suit arising on the reservation. The court had this to say, "In this case the State legislature having given the required consent and the United States having purchased the land in question, the United States have acquired, under the Federal Constitution, exclusive jurisdiction over the ceded lands and they are no longer a part of the State of Virginia and are not subject to the jurisdiction of the State courts."

This is a clear decision of the question now before us.

The *Foley Case* was followed by *Bank of Phoebus* v. *Byrum, supra.* The situation in that case was practically identical with that in the *Foley Case.* The *Foley Case* was held as controlling.

One of the early Supreme Court cases is *Ft. Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264. There it was held that the area on which Fort Leavenworth, Kansas, was located had been taken by the United States, that it acquired exclusive jurisdiction, and that the area ceased to be a part of the State.

In *Western Union Tel. Co.* v. *Chiles,* 214 U. S. 274, 29 S. Ct. 613, 53 L. Ed. 994, the holding was to the same effect. In that case the Norfolk navy yard was involved, and in deciding the case the court had this to say: "It is apparent from the history of the establishment of the Norfolk navy yard, already given, that it is one of the places where the Congress possesses exclusive legislative power. It follows that the laws of the State of Virginia, with the exception referred to in the acts of assembly, cannot be allowed any operation or effect within the limits of the yard. The exclusive power of legislation necessarily in-

cludes the exclusive jurisdiction. The subject is so fully discussed by Mr. Justice Field, delivering the opinion of the court in *Ft. Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264, that we need do no more than refer to that case and the cases cited in the opinion. * * *"

In all of the cases the question of the reservation by a State of the right to serve civil and criminal process in the reservation was considered, and the courts, without dissent, have held that this reservation to the States in no way affects the exclusive jurisdiction of the United States in the areas involved. The general rule seems to be settled that the reservation by the State to the effect that civil and criminal process of the State courts may be served within the limits so acquired is not incompatible with the exclusive jurisdiction of the Federal government, but is made to prevent such places from becoming sanctuaries for debtors and criminals.

The judgment of the Circuit Court of Pulaski county is reversed and the action is dismissed.

*Reversed and dismissed.*