# CIRCUIT COURT OF CAROLINE COUNTY

Roy H. McCoy
and Elizabeth P. McCoy

    v.

James D. East
and Fannye E. East

January 5, 1959

BY JUDGE JOHN D. BUTZNER, JR.

The plaintiffs, alleging fraud and deceit in the sale of real estate, sought to attach property of the defendants. The attachment was dismissed and the case heard on the merits pursuant to § 8-557 of the Code of Virginia, 1950. The parties waived a jury.

The facts can be given briefly. The transcript has not been reproduced, and for that reason, the evidence will be stated in narrative form.

By deeds dated June 4, 1952, and September 24, 1952, the defendants acquired from the Virginia Central Railway two adjoining tracts of land containing 3 acres and 2.25 acres. By deed dated July 16, 1957, the defendants conveyed 1.13 acres of the above-mentioned property to Bennie Crump, Jr. All of the conveyances were made by plats recorded with the respective deeds. (Def. ex. 4, 6, 8.) The Crump conveyance included a well, cinderblock shed, wooden shed, and rabbit shed. On the remaining portion of the defendants' property was a dwelling with attached breezeway and garage and a well.

The plaintiffs became interested in purchasing the property in the spring of 1958. A contract of sale was executed May 27, 1958. (Def. ex. 1.)

In support of their charges of fraud and deceit, the plaintiffs testified that the defendants misrepresented the boundary lines and the location of improvements. They testified that the defendants showed them an exterior line that embraced the Crump property, lifted the top of the Crump well for their inspection, commented on a garden spot of the Crump land, spoke of the wooden shed, the cinderblock shed, and the rabbit shed as going with the

property and never divulged that these improvements were on the Crump land and not a part of the defendants' property.

The plaintiffs visited the property half a dozen times or more before possession was transferred. On one of these occasions, the defendant, James D. East, helped them store some of their garden tools in one of the Crump sheds. On another occasion, the parties discussed a survey of the property. Mr. East advised against a survey, stating that he had had the property surveyed when he bought it and that no further survey was necessary.

The plaintiffs employed the attorney who had drawn the contract to search the title but expressly stated they did not want a survey. This attorney also drew the deed from the defendants to the plaintiffs. (Def. ex. 2.) The deed conveys 4.13 acres, describing the property by metes and bounds, referring to the plats of record, and mentioning the Crump off-conveyance. The deed to the plaintiffs had no plat. The plaintiffs, upon hearing the deed read to them, asked the defendant, Mr. East, about the Crump land. He told them that it was beyond the boundary line he had showed them. Thereupon, the plaintiffs paid the purchase price and took delivery of the deed and possession of the premises.

It is undisputed that the deed conveyed 4.13 acres with the dwelling house and attached breezeway and garage. It also included a well which served the dwelling. It did not include the 1.13 acres of Crump land or the Crump well and three buildings. A composite plat (Pl. ex. 2) shows the two tracts with their respective improvements.

A short time after the transaction was closed, the plaintiffs learned the location of the Crump boundary and that three of the buildings and one of the wells were not on the land they had purchased.

The evidence disclosed that when the plats of the defendants' purchases and the plat of the Crump off-conveyance were made, the lines had been marked by pipes as shown on plaintiffs' exhibit 2. The pipes along the Crump boundary could not be observed readily. There is some evidence that one pipe had been driven into the ground. The plaintiffs sought to prove that the defendants tampered with the pipes. There was no evidence to support this.

The defendants denied making the alleged misrepresentations. Mr. East testified that just before the sale was closed, he offered to show the plaintiffs the lines, but they declined, saying they already knew them. In explanation of his actions concerning the Crump buildings, Mr. East testified that he had a lease — or permission — from Crump to use the buildings.

Both the plaintiffs and the defendants introduced evidence that tended to corroborate their testimony.

Although there is a conflict in the evidence, the court finds that the plaintiffs have proved by clear, cogent, and convincing evidence that the defendants misrepresented the location of the boundary line and the location and ownership of the Crump well and three buildings, that the misrepresentations were matters of fact, were untrue, and were material. A more difficult question is whether the plaintiffs relied on the misrepresentations. This phase of the case will be considered in some detail.

The defendants contend in their brief "that the recordation of the plats showing the true boundary lines of the property, coupled with the plaintiffs' investigation of the property and their employment of an attorney to search the title, which necessarily included the boundary lines, as a matter of law, prohibits the plaintiffs from recovering in this case."

In support of their position, the defendants cite *Chavis v. Gibbs*, 198 Va. 379, 94 S.E.2d 195 (1956); *Coles v. Withers*, 74 Va. (33 Gratt.) 186 (1880); and *Miller v. Holland*, 84 Va. 652 (1888). These cases, however, do not involve controversies between grantor and grantee arising out of fraud. They are not applicable to the case at bar. The effect and operation of recording acts are governed by statute. Section 55-96 of the Code of Virginia, 1950, does not charge a defrauded vendee with constructive notice so as to bar recovery from the vendor. The court holds, therefore, that the recordation of the prior plats and deeds does not as a matter of law defeat the plaintiff's recovery. This is consistent with the decision of *Grimes v. Peoples National Bank of Pulaski*, 191 Va. 505, 62 S.E.2d 22 (1950). See also *Lynch v. Palmer*, 237 Mass. 150, 129 N.E. 374, 33 A.L.R. 842 (1921), and annotation "Fraud — matter of public record" 33 A.L.R. 853, 1039, sec. 48, "Boundaries."

The defendants also contend that the attorney who searched the title for the plaintiffs had actual knowledge of the plats and records. They argue that the attorney was the agent of the plaintiffs and that his knowledge must be imputed to the plaintiffs and thus bar their recovery.

The record does not clearly develop the relationship of the attorney to the parties. It appears, however, that he represented both vendors and vendees in this transaction. Under these circumstances, the rule of imputed knowledge may be qualified. *Foreman v. German Alliance Ins. Co.*, 104 Va. 694, 52 S.E. 337 (1905) (dictum).

The Court is of the opinion, however, that it is not necessary to further consider the rule of imputed knowledge. There is no evidence in the case that the attorney had any knowledge of the location of the boundary on the land or of the location of the Crump well and three buildings in reference to the boundary. Nor did he have knowledge of the ownership of the Crump improvements. Certainly, the records did not show these facts.

*Masche v. Nichols*, 188 Va. 694, 51 S.E.2d 144 (1949), concerns in part the location of a well. The facts, however, were different from the case at bar. (See Record No. 3417, p. 74, opinion of the trial court.) The case is not controlling.

The evidence shows that the plaintiffs made no independent investigation, full or partial, to determine the location of the boundary on the land, or to determine the ownership of the Crump well and buildings, or to determine whether these improvements were within the bounds of the land they purchased. They relied on the representations made by the defendants when they inspected the property. The rules concerning the effect of investigations stated in *West End Real Estate Co. v. Claiborne*, 97 Va. 734, 34 S.E. 900 (1900); *Masche v. Nichols*, 188 Va. 694, 51 S.E.2d 144 (1949); and *DeJarnette v. Brooks, etc.*, 199 Va. 18, 97 S.E.2d 750 (1957), are not applicable to the evidence in the case at bar.

The facts could have been disclosed by a survey. The defendant, Mr. East, advised the plaintiffs against a survey. He cannot now complain that they followed his advice. A defense that a boundary could have been ascertained by survey was rejected in *Stout v. Martin*, 87 W. Va. 1, 104 S.E. 157 (1920). When a representation has been made, there is an inference that it was relied upon. The buyer should not be deprived of relief because he had the means of discovering that the representation was false. *Wilson v. Carpenter*, 91 Va. 183, 21 S.E. 243 (1895). This rule, of course, is qualified by *Lake v. Tyree*, 90 Va. 719, 19 S.E. 787 (1894). The evidence, however, discloses no "indolence and folly, or a careless indifference to the ordinary and accessible means of information" on the part of the plaintiffs that should bar their recovery.

The court holds that the evidence shows that the plaintiffs relied on the representations and further that they are not barred from recovery by reason of the title search or their inspection of the property.

In *Parker v. Inge*, 157 Va. 592, 161 S.E. 884 (1932), relief was granted to the vendee because boundaries had been misrepresented. In *Hastings v. Bain*, 151 Va. 976, 145 S.E. 735 (1928), a vendee of a lot was awarded damages because the location of the lot had been misrepresented. The court is of the opinion that the vendees in the case at bar are entitled to damages.

The measure of damages is the difference between the value of the property actually received and its value had it been as represented. 5 Michie Jurisprudence, *Damages*, § 37, p. 526.

In support of their claim, the plaintiffs introduced a competent, reputable real estate agent who testified that the property was worth $16,000.00 as represented and $12,000.00 as it was actually received, making damages of $4,000.00. The witness gave the reasons for his conclusions. This evidence

was not uncertain or speculative. It satisfied the requirements stated in *White Sewing Machine Co. v. Gilmore Furniture Co.*, 128 Va. 630, 105 S.E. 134 (1920).

The defendants introduced no evidence to contradict this testimony except the purchase price of the Crump sale which was $800.00. They contend that this is the correct amount of damages, if any. In support of this position, they point out that the condition of the Crump property has not been changed since its sale.

The value of the Crump property, however, is not the correct measure of damages. Its severance from the entire lot could and did reduce the value of the lot more than $800.00. For example, a factor to consider in determining damages is that a boundary line that had been represented as over 150 feet from the dwelling was in truth less than 50 feet away. To simply measure the damages by the sales price of the Crump land is to ignore this factor and others similar to it.

The question, however, is complicated by the fact that one of the plaintiffs testified to the effect that he was satisfied with the amount of land received. In other words, he did not complain about the deficiency of 1.13 acres. The real estate agent, however, considered the deficiency in acreage as one element of the damages to which he testified. The only evidence of the value of 1.13 acres is the Crump sale of $800.00 which included improvements. The plaintiffs, however, did not separately value the improvements and the land, and there is no evidence upon which separate values can be based. Therefore, the entire $800.00 will be assigned to the 1.13 acres. For these reasons, the court is of the opinion that the plaintiffs' damages are $3,200.00 which has been computed by deducting $800.00 (the sales price of the Crump property) from $4,000.00 (the difference between the property as represented and as it was actually received).

Judgment will be entered for the plaintiffs in the amount of $3,200.00 with interest from November 3, 1958, the date of trial, and costs.