# Richmond

R. E. WALTRIP v. COMMONWEALTH OF VIRGINIA.

April 25, 1949.

Record No. 3508.

Present, All the Justices.

The opinion states the case.

*Channing M. Hall,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Ballard Baker, Assistant Attorney General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Waltrip, the petitioner, was found guilty of violating the State game laws in the circuit court of York county. He admitted that he had shot and killed a rabbit within the boundaries of Camp Peary on July 2, 1948, out of the lawful hunting season for rabbits in this Commonwealth.

The error assigned is that the area of Camp Peary is owned by the United States; that it has exclusive jurisdiction within the territorial limits of the area, and that the game

laws of the Commonwealth of Virginia are not enforceable therein.

In September, 1942, and subsequent thereto, the United States acquired the fee-simple title to several thousand acres of land in York county. This area was used during the war as a training camp. In 1947 the United States, through its proper officers, executed an indeterminate revocable permit granting to the Commonwealth of Virginia permission to occupy and use the Camp Peary area "in connection with the activities of the Conservation Commission and the Game and Inland Fisheries Commission."

There is no proof in the record that any authorized officer of the United States ever applied for or secured from the Commonwealth of Virginia cession of any jurisdiction, exclusive or partial, over this area. The United States has never sought nor accepted jurisdiction over it. On the other hand, from certain correspondence, filed by agreement of parties, it is definitely shown that the United States not only never accepted any jurisdiction over this area, but it expressly refused to accept such jurisdiction. These letters are from the Bureau of Yards and Docks of the Navy Department and the Public Works Department.

The petitioner bases his contention upon certain constitutional provisions. He relies upon article 1, section 1, of the Constitution of the United States, which provides, "All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

He also relies upon article 1, section 8, subsection 1, of the same Constitution, which provides, "the Congress shall have power to * * * provide for the common defense and general welfare of the United States", and subsection 17, in which it is provided that Congress shall have power "to exercise exclusive legislation in all Cases whatsoever, over such district * * * as may, by Session of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Legislature of the

State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

He also relies upon subsection 18 of said article, which provides that Congress shall have power "to make all Laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other Powers vested by this Constitution in the government of the United States, or in any department or officer thereof".

It is contended that the foregoing constitutional provisions gave the Congress the power to legislate and to exercise exclusive jurisdiction over Camp Peary as property of the United States acquired for war purposes with the consent of the legislature of Virginia.

Camp Peary has innumerable buildings. At one time during the recent World War there were some sixty to sixty-five thousand men in training there. Many buildings still remain. The United States is still the fee-simple owner of the land but, as stated, it has entrusted or permitted the Commonwealth of Virginia to have temporary possession and custody of the property under a revocable permit.

An Act of Congress enacted on October 9, 1940, and found in 40 U. S. C. A., sec. 255, is conclusive of this case. It provides, "Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be pre-

scribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted. * * *"

The pertinent State statutes are to be found in Code, sections 19 and 19e (Michie's Code, 1942).

Under section 19 of the Code, conditional consent of the Commonwealth is given to the United States to acquire lands in Virginia for military purposes, with this express reservation: "For all purposes of taxation and of the jurisdiction of the courts of Virginia over persons, transactions, matters and property on said lands, the said lands shall be deemed to be a part of the county or city in which they are situated." And again, it is provided: " * * * Over all lands acquired by or leased or conveyed to the United States pursuant to the conditional consent herein conferred, the Commonwealth of Virginia hereby cedes to the United States concurrent jurisdiction, legislative, executive and judical, with respect to the commission of crimes and the arrest, trial and punishment therefor, * * *."

Section 19e of the Code provides for conferring additional and exclusive jurisdiction on the United States over lands acquired for the purposes set out in section 19, and also grants to the United States concurrent jurisdiction over crimes and offenses committed on lands acquired since March 28, 1936. The ceding of the additional or exclusive jurisdiction is made by deed by the Commonwealth through the Governor and Attorney General, but in the case at bar no such deed was ever requested or made.

It is clear that under the admitted facts the United States has never accepted any jurisdiction over the area embraced in Camp Peary. The words of the statute, (40 U. S. C. A., sec. 255), "Unless and until the United States has accepted jurisdiction over lands hereinafter to be acquired as aforesaid it shall be conclusively presumed that no such jurisdiction has been accepted", are determinative of this case.

The Attorney General, in his brief, sums up the case in

this very apt language: "It thus appears that Camp Peary was acquired by the United States pursuant to the power granted by Article 1, sec. 8. Virginia properly reserved concurrent jurisdiction, and has not ceded additional jurisdiction as provided by sec. 19e of the Virginia Code. The United States has never accepted jurisdiction over Camp Peary as is required by the Act of 1940. It, therefore, appears that Virginia retains jurisdiction over Camp Peary, its statutes are applicable, and its courts may enforce them."

Even before the Act of Congress (40 U. S. C. A., sec. 255), the Supreme Court, in *James* v. *Dravo Contracting Co.*, 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155, 114 A. L. R. 318, held that the mere ownership of land by the United States does not withdraw it from the jurisdiction of a State and that the respective jurisdictions of the United States and the State depend upon the extent of the State's consent. A State can refuse to grant jurisdiction, and in that event it will be retained by the State if it is consistent with the purposes for which the United States acquired the property. The court concluded that the reservation by West Virginia of concurrent jurisdiction over the lands acquired by the United States did not operate to deprive the United States of the enjoyment of the property for the purpose for which it was acquired, and that the reservation by the State was applicable and effective.

The reservation by the Commonwealth of Virginia of concurrent jurisdiction over the Camp Peary area, under section 19 of the Code, and the operation and enforcement of the Virginia game laws, do not in any way deprive the United States of the enjoyment of the property for the purposes for which it was acquired.

See also, *James Stewart & Co.* v. *Sadrakula*, 309 U. S. 94, 60 S. Ct. 431, 84 L. Ed. 596, 127 A. L. R. 821, where the court aptly stated, "It is now settled that the jurisdiction acquired from a State by the United States, whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments * * *".

The petitioner relies upon *Western Union Tel. Co.* v. *Chiles*, 214 U. S. 274, 29 S. Ct. 613, 53 L. Ed. 994, which involved the territory of the Norfolk Navy Yard. That case is unlike the one at bar for the reason that the United States possessed exclusive legislative power in that territory. The Commonwealth had ceded all of its jurisdiction to the United States. And the same is true in regard to the other cases relied upon by the petitioner. In all of them the United States had acquired exclusive jurisdiction either by cession by the State or by other State action. It did not arise merely from the ownership by the United States. See *Western Union Tel. Co.* v. *Brown*, 234 U. S. 542, 34 S. Ct. 955, 58 L. Ed. 1457; *United States* v. *Unzeuta*, 281 U. S. 138, 50 S. Ct. 284, 74 L. Ed. 761; *Surplus Trading Co.* v. *Cook*, 281 U. S. 647, 50 S. Ct. 455, 74 L. Ed. 1091; *Standard Oil Co.* v. *California*, 291 U. S. 242, 54 S. Ct. 381, 78 L. Ed. 775; *Pacific Coast Dairy* v. *Department of Agriculture*, 318 U. S. 285, 63 S. Ct. 628, 87 L. Ed. 761, and *Adams* v. *United States*, 319 U. S. 312, 63 S. Ct. 1122, 87 L. Ed. 1421.

In the recent case of *Hercules Powder Co.* v. *Ruben*, 188 Va. 694, 51 S. E. (2d) 149, exclusive jurisdiction was conferred upon the United States by an authorized deed of cession, and in that respect that case is unlike the one at bar.

The judgment of the trial court is affirmed.

*Affirmed.*