**UNITED STATES of America**

v.

**Martin Daniel SCHUSTER.**

**Crim. No. 12334.**

United States District Court
E. D. Virginia,
Norfolk Division.
July 30, 1963.

C. V. Spratley, Jr., U. S. Atty., Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Sam D. Eggleston, Jr., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

The jurisdictional question raised by the defendant's motion to dismiss the indictment, charging him with unauthorized use of an automobile taken from the Destroyer and Submarine Piers parking lot, Norfolk, Virginia, is of major importance to the enforcement of criminal laws over offenses committed within the "special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 13; Code of Virginia, 1950, as amended, Title 18.1, § 164.

The issue is whether a crime committed on private property *leased* by the United States comes within the criminal jurisdiction of a federal district court where said property is occupied as a part of a naval base.

The facts are not in dispute. Assuming arguendo that the defendant did unlawfully take the automobile of another, without the consent of the owner and in his absence, and with the intent to temporarily deprive the owner of his possession, but without intent to steal said vehicle, the crime is complete under the Virginia statute, Title 18.1, § 164, Code of Virginia, 1950, as amended. The vehicle was taken from a parking lot which is a part of the Norfolk Naval Base; said property being included within lands occupied by the United States of America pursuant to a lease agreement between the United States and the Virginian Railway Company (now merged with the Norfolk & Western Railway Company); said lease being dated June 30, 1955, expiring on June 30, 1956, with the option in the United States to renew said lease on a year-to-year basis for a period of 20 years, and with the further option in the United States to purchase said property during the term of the lease or any renewal thereof. At the time of the alleged crime on May 10, 1961, the renewal of the lease was in full force and effect.

The United States claims concurrent jurisdiction with the Commonwealth of Virginia over said lands in accordance with Title 7, § 19, Code of Virginia, 1950, and pursuant to a letter dated August 23, 1957, written as required by 40 U.S.C. § 255, from which it appears that the United States of America, acting through the Department of the Navy, has accepted concurrent jurisdiction.

The parties agree that the United States has complied with the statutes of Virginia and the United States for the obtaining of concurrent jurisdiction, if the same can be legally obtained. They further agree that no public notice of the acquisition of concurrent jurisdiction over said lands has been given; nor is there any provision requiring such notice by the laws of Virginia or the United States. The only notice to the public that the United States has jurisdiction, if any, over said land is the possession of said property by the United States. It is further conceded that the interest of the United States in the premises in question was obtained for the purpose of conducting thereon certain naval activities in various forms.

The special and maritime jurisdiction of the United States as referred to in 18 U.S.C. § 13 is set forth and defined in 18 U.S.C. § 7(3) as follows:

"Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

The defendant, by his motion to dismiss predicated upon the foregoing stipulated facts, argues that the lands in question, under lease from the Virginian Railway Company to the United States, do not fall within the meaning of 18

U.S.C. § 7(3). Stated otherwise, the defendant contends that property must be owned or titled in the United States before criminal jurisdiction will attach.

Under the provisions of Article I, Section 8, Clause (17) of the Constitution of the United States, it is provided:

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, * * * and to exercise like Authority over all Places *purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other* needful Buildings; * *."

It is apparent that the second clause of 18 U.S.C. § 7(3) is substantially verbatim with the foregoing wording upon which emphasis has been placed, except that the words "or otherwise acquired by the United States" will be found in 18 U.S.C. § 7(3) immediately following the word "purchased."

Prior to 1885 it is abundantly clear that the United States could only acquire jurisdiction by purchase, with the consent of the state legislature, for the purposes stated in Article I, § 8, cl. 17, unless the jurisdiction had been reserved by the United States when the particular state was admitted into the union. No distinctions were drawn between consents and cessions. Perhaps the closest case in point under the law as it existed before 1885 is United States v. Tierney, Ohio, 1864, 28 Fed.Cas. 159, No. 16,517, where it is said land leased to the United States for one month, with the privilege of using and occupying the same for six months, at the option of the government, at a stipulated rent, is not a "place" within the meaning of this clause [Art. 1, § 8, cl. 17]. The Constitution clearly implies the permanent use of the property purchased, for the construction or erection of some of the structures designated, or some other needful building.

However, Tierney was decided at a time when the law provided that the United States must have *exclusive* legislative authority over the land in order to exercise criminal jurisdiction. Concurrent jurisdiction was an unknown factor. The Constitution does not prohibit the United States from exercising concurrent jurisdiction with a state as to lands condemned for use as a dam or lock site. James v. Dravo Contracting Company, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155.

By letter dated August 23, 1957, the Assistant Secretary of the Navy advised the Governor of Virginia that the United States held, by five separate leases, approximately 171.84 acres of land and improvements lying within the City of Norfolk, Virginia, which land (including the parcel which is the locus of the alleged crime) was acquired for naval purposes. The Navy, acting in behalf of the United States, accepted concurrent jurisdiction over the property "in the manner and form granted and ceded by an Act of the General Assembly of the Commonwealth of Virginia approved April 1, 1940," incorporated into the Code of Virginia, 1950, as § 7–19.

Section 7–19 of the Code of Virginia, 1950, provides in part:

"The conditional consent of the Commonwealth of Virginia is hereby given to the *acquisition* by the United States, or under its authority, by purchase, *lease*, condemnation, or otherwise, of any lands in Virginia, whether under water or not, from any individual, firm, association or body corporate, for sites for customs houses, courthouses, arsenals, forts, naval bases, military or naval airports or airplane landing fields or for any military or naval purpose.

* * * * *

"Over all lands acquired by or *leased* or conveyed to the United States pursuant to the conditional consent herein conferred, the Commonwealth

hereby cedes to the United States concurrent jurisdiction, legislative, executive and judicial, with respect to the commission of crimes and the arrest, trial and punishment therefor."

■ The mere fact that the state has retained the right to serve criminal and civil process on such lands is not effective to prevent cession of exclusive or concurrent criminal jurisdiction to the federal government. United States v. Lovely, 4 Cir., 319 F.2d 673. The purpose of this reservation is to prevent the land involved from becoming an asylum for fugitives from justice. Fort Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, 533, 5 S.Ct. 995, 29 L.Ed. 264.

The practice which exists in this area with respect to crimes committed on lands "acquired" in any manner by the United States is to permit—indeed, to require—the federal government to prosecute. The state adopts a "hands off" policy.

■ Federal jurisdiction over a crime does not arise merely from the ownership of the United States. Waltrip v. Commonwealth, 189 Va. 365, 53 S.E.2d 14, 16, 17, and authorities cited therein.

In Collins v. Yosemite Park Co., 304 U.S. 518, 528, 58 S.Ct. 1009, 1013, 82 L.Ed. 1502, it is said:

"The States of the Union and the National Government may make mutually satisfactory arrangements as to jurisdiction of territory within their borders and thus in a most effective way, coöperatively adjust problems flowing from our dual system of government. Jurisdiction obtained by consent or cession may be qualified by agreement or through offer and acceptance or ratification. It is a matter of arrangement. These arrangements the courts will recognize and respect."

Moreover, in Collins it is stated that Clause 17, § 8, Article I of the Constitution is not the sole authority for the acquisition of jurisdiction, and that jurisdiction less than exclusive may be granted the United States.

■ Manifestly, the authorities point to the fact that property need not be *owned* or *titled* in the United States before criminal jurisdiction will attach. Benson v. United States, 146 U.S. 325, 330, 13 S.Ct. 60, 36 L.Ed. 991. Jurisdiction may, nevertheless, be transferred to the general government by cession. The terms of cession, to the extent that they may lawfully be prescribed, determine the extent of the federal jurisdiction. United States v. Unzeuta, 281 U.S. 138, 142, 50 S.Ct. 284, 74 L.Ed. 761.

In the last cited case the crime was committed on a right of way granted to the railroad by Congress, prior to the cession of jurisdiction by the State of Nebraska, and the court noted that this right of way, running across the military reservation, was impracticable for the state to attempt to police it, and the federal jurisdiction was considered to be essential to the appropriate enjoyment of the reservation for the purposes to which it was devoted. Much the same situation exists under the facts here presented.

■ The argument that a state is powerless to surrender its jurisdiction to the United States over privately owned lands is without merit. As was said in Petersen v. United States, 9 Cir., 191 F.2d 154, 156:

"But no authority has been submitted nor does independent research reveal any basis for concluding that the sovereign state may not, as a part of its power of sovereignty, cede part of its jurisdiction over privately owned property to its paramount sovereignty in cases like the instant one. To the contrary, it is clear that such cessions of jurisdiction, motivated by the comity between sovereigns, have been found to be lawful and proper for the reason that they are necessary in order to secure the great public benefits intended to be derived from the dedicated area."

Holding that Virginia has ceded concurrent jurisdiction to the federal government for crimes committed on this private property leased by the United States for purposes of the operation of a naval base, the motion to dismiss will be denied.