**UNITED STATES of America,
Plaintiff-Appellee,
v.
Leonard GLIATTA, Defendant-Appellant.**

No. 78–5106
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1978.

Rehearing Denied Oct. 16, 1978.

---

* Rule 18, 5 Cir.;  *see Isbell Enterprises, Inc.  v.  Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

W. J. Foley, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Peter Koste, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Proving that haste does make waste, Leonard Gliatta finds himself convicted on two counts for his improper conduct on postal office property. Little did he realize that crossing the yellow stripe would bring him face to face with the strong arm of federal criminal law or that his plight would send us to the Constitution. Alas, the Constitution does not extricate him and we affirm.

Prior to reporting for work on January 4, 1978, at the general mail facility located at 2200 Northwest 72nd Avenue, Miami, Florida, Gliatta drove into the employees' parking lot to park his car. In the course of doing so, he was observed by a postal security officer to cross a solid yellow line into the opposite lane of traffic and pass another vehicle at an excessive rate of speed. Gliatta was stopped by the security officer and cited for violating 39 C.F.R. § 232.6(k), which regulates the operations of motor vehicles on postal property.[1] While the officer was still writing the citation, Gliatta—perhaps anxious to end the incident as quickly as possible and begin his day's work—got back into his car, and in spite of the officer's orders to stop, drove it a short distance into an empty parking space. For this action, Gliatta was charged with violating 39 C.F.R. § 232.6(d), which provides that all persons on postal property shall comply with the directions of security force personnel.[2]

In a non-jury trial eight days later, the United States District Court convicted Gliatta on both charges and fined him $50 for each violation. Gliatta appeals his convictions on the sole ground that the Court was without jurisdiction to try him for the offenses committed at the Miami postal facility.[3] We find the appellant's jurisdictional argument unavailing.

### The Exclusive Jurisdiction Red Herring

Appellant's argument takes the following form (reconstructing it for ease of presenta-

---

**1.** The pertinent portion of 39 C.F.R. § 232.6(k) reads:

Drivers of all vehicles in or on [postal] property shall drive in a careful and safe manner at all times and shall comply with the signals and directions of security force personnel, other authorized individuals, and all posted traffic signs.

**2.** All persons in and on [postal] property shall comply with official signs of a prohibitory or directory nature, and with the directions of security force personnel or other authorized individuals.

39 C.F.R. § 232.6(d).

**3.** Before trial, Gliatta moved to dismiss the charges for want of jurisdiction, but the District Court denied the motion.

tion). (1) The government's jurisdiction to try anyone for violations of the postal regulations embodied in 39 C.F.R. § 232.6 depends upon the government's possessing exclusive or concurrent jurisdiction over the postal premises in question. (2) The government had not, as of January 4, 1978, acquired exclusive or concurrent jurisdiction over the postal facility located at 2200 Northwest 72nd Avenue, Miami, Florida. (3) The government is therefore without jurisdiction to try him for the alleged violations committed at that facility on January 4, 1978.

■ The crucial step in the appellant's argument is the initial one. At first blush, the appellant's proposition appears correct. 39 C.F.R. § 232.6(p) provides that "[m]embers of the U. S. Postal Service security force shall exercise the powers of special policemen provided by 40 U.S.C. 318." Un-

der the proviso to 40 U.S.C. § 318, the jurisdiction of such special policemen is "restricted to Federal property over which the United States has acquired exclusive or concurrent criminal jurisdiction." [4] To secure exclusive or concurrent jurisdiction of property within a state's political boundaries, the federal government must either (1) comply with the requirements of Art. I, § 8, cl. 17 of the Constitution,[5] or (2) obtain a cession of legislative authority from the State in which the land is located.[6] Whichever course is followed, there has existed since 1940 the additional requirement, imposed by Congress, that the United States give its affirmative assent to the transfer of exclusive or concurrent jurisdiction before such jurisdiction becomes effective. *See* 40 U.S.C. § 255.

*Adams v. United States,* 1943, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421, aptly illustrates the consequences of a failure by

---

**4.** In its entirety, 40 U.S.C. § 318 provides that
The Administrator of General Services or officials of the Administration duly authorized by him may appoint uniformed guards of said administration as special policemen without additional compensation for duty in connection with the policing of public buildings and other areas under the jurisdiction of the Administrator of General Services. Such special policemen shall have the same powers as sheriffs and constables upon such Federal property to enforce the laws enacted for the protection of persons and property, and to prevent breaches of the peace, to suppress affrays or unlawful assemblies, and to enforce any rules and regulations made and promulgated by the Administrator or such duly authorized officials of the Administration for the property under their jurisdiction: *Provided,* That the jurisdiction and policing powers of such special policemen shall not extend to the service of civil process and shall be restricted to Federal property over which the United States has acquired exclusive or concurrent criminal jurisdiction.
The concept of "exclusive or concurrent" federal jurisdiction, for purposes of 40 U.S.C. § 318, is the same as exclusive or concurrent jurisdiction under Art. I, § 8, cl. 17 of the Constitution, *see* note 5, *infra.*

**5.** Article I, § 8, cl. 17 gives Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever * * * over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." The term "exclusive Legislation" is the equivalent of "exclu-

sive jurisdiction." *Surplus Trading Co. v. Cook,* 1930, 281 U.S. 647, 652, 50 S.Ct. 455, 458, 74 L.Ed. 1091.
Where federal jurisdiction over a federal enclave is exclusive, the state retains no legislative or political authority over that property. But, despite the language of the Constitutional clause, federal jurisdiction may be concurrent instead of exclusive: in giving its consent, the state may reserve to itself such local jurisdiction as it desires provided it does not interfere with the performance of federal governmental functions. *James v. Dravo Contracting Co.,* 1937, 302 U.S. 134, 146–49, 58 S.Ct. 208, 215–16, 82 L.Ed. 155.

**6.** In order to acquire land within a state by purchase or by condemnation, the federal government does not need the consent of the state. *Kohl v. United States,* 1876, 91 U.S. 367, 371, 23 L.Ed. 449. Absent the state's consent, however, the United States does not obtain exclusive or concurrent jurisdiction. Instead it is simply an ordinary proprietor. *See Surplus Trading Co. v. Cook,* 1930, 281 U.S. 647, 650, 50 S.Ct. 455, 458, 74 L.Ed. 1091. But even in this circumstance, the United States may secure jurisdiction over the purchased or condemned land through "a cession of legislative authority and political jurisdiction" from the state, *see Fort Leavenworth R.R. Co. v. Lowe,* 1885, 114 U.S. 525, 541–42, 5 S.Ct. 995, 1001, 29 L.Ed. 264, and the cession may be either complete or qualified. *See Paul v. United States,* 1963, 371 U.S. 245, 264–65, 83 S.Ct. 426, 437–38, 9 L.Ed.2d 292.

the government to "perfect" its exclusive or concurrent jurisdiction. In *Adams,* the government attempted to prosecute three soldiers under 18 U.S.C. § 457 (now codified at 18 U.S.C. § 2031), which made it a federal crime to commit rape "within the special maritime and territorial jurisdiction of the United States," which includes "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof," 18 U.S.C. § 451 (now codified at 18 U.S.C. § 7(3)). The alleged rape occurred within the confines of a government military camp, over which, at the time of the crime, the government had not accepted or acquired exclusive or concurrent jurisdiction from the State of Louisiana. The Supreme Court held that in these circumstances the trial court was without jurisdiction to try and sentence the defendants for the alleged rape. *See also United States v. Pate,* 7 Cir., 1968, 393 F.2d 44, *cert. denied,* 1968, 393 U.S. 890, 89 S.Ct. 209, 21 L.Ed.2d 168; *DeKalb County, Georgia v. Henry C. Beck Co.,* 5 Cir., 1967, 382 F.2d 992.

The government concedes that it did not, as of January 4, 1978, have exclusive or concurrent jurisdiction over the postal facility at which appellant's conduct occurred. The appellant therefore argues, relying on *Adams,* that we must reverse his convictions and dismiss the charges for lack of jurisdiction. And so we would, but . . .

### Sunk By Appropriations

Unfortunately the appellant overlooks the Treasury, Postal Service, and General Government Appropriations Act for 1978, Pub.L. No. 95–81, 91 Stat. 341, which was enacted some six months before the conduct in question. Section 610 of that Act, 91 Stat. 356, provides

> Funds made available by this or any other Act to (1) the General Services Administration * * * and (2) the "Postal Service Fund" * * *, shall be available for employment of guards for all buildings and areas owned or occupied by the United States or the Postal Service and under the charge and control of the General Services Administration or the Postal Service, and *such guards shall have, with respect to such property, the powers of special policemen provided by [40 U.S.C. 318], but shall not be restricted to certain Federal property as otherwise required by the proviso contained in said section,* and, as to property owned or occupied by the Postal Service, the Postmaster General may take the same actions as the Administrator of General Services may take under the provisions of [40 U.S.C. 318a, 318b] attaching thereto penal consequences under the authority and within the limits provided in [40 U.S.C. 318c]. [Emphasis added.][7]

By enacting § 610, Congress provided a mechanism by which the United States, or its instrumentality the United States Postal Service, could maintain order on postal facilities and thereby facilitate mail service without resorting to the somewhat byzantine process of securing exclusive or concurrent federal jurisdiction over such property.[8] Thus, by virtue of § 610,

---

7. 40 U.S.C. § 318 is set forth in note 4, *supra.*

The authority granted the Postmaster General by § 610 of the Appropriations Act with respect to property owned or occupied by the Postal Service is defined by 40 U.S.C. §§ 318a–318c as follows: (1) "to make all needful rules and regulations for the government of the Federal property" under the "charge and control" of the Postal Service, "and to annex to such rules and regulations such reasonable penalties, within the limits prescribed in [40 U.S.C. § 318c], as will insure their enforcement," *see* 40 U.S.C. § 318a; (2) to enlist, when deemed economical and in the public interest, the facili-

ties and services of both existing federal law-enforcement agencies and, with their consent, state or local law-enforcement agencies, *see* 40 U.S.C. § 318b; and (3) to penalize violations of rules and regulations promulgated pursuant to § 318a with fines of no more than $50 or imprisonment of no more than 30 days, *see* 40 U.S.C. § 318c.

8. Section 610 is not unique to the Treasury, Postal Service, and General Government Appropriations Act for 1978. Congress included similar or identical provisions in Appropriations Acts for each year since 1972.

the principle of *Adams* does not control this case.

### But One Constitutional Leg To Stand On?

The foregoing ought to be sufficient to conclude this case and the chain of events triggered by Leonard Gliatta's inordinate haste on the afternoon of January 4th. But the appellant seems to urge yet another jurisdictional flaw. His argument, although somewhat inchoate, at least deserves our response. The appellant suggests that even if the United States has statutory jurisdiction to enforce the postal regulations which he violated, it lacks power under the Constitution to exercise jurisdiction in the manner in which it did in this case. The theory apparently underlying this suggestion is that subject matter jurisdiction to enforce regulations relating to government owned and operated postal facilities can be exercised only under the restrictive terms of Art. I, § 8, cl. 17 of the Constitution.[9]

■ The federal government is not, however, hamstrung by the Exclusive Jurisdiction Clause when it seeks to enact and enforce regulations pertaining to postal service and government property. The Post Office Clause, Art. I, § 8, cl. 7, grants Congress the power "[t]o establish Post Offices and post Roads." This clause has been construed expansively to encompass all sorts of measures relating to the safe and efficient transmission of the mail, *see, e. g., Ex parte Jackson,* 1878, 96 U.S. 727, 24 L.Ed. 877; *In re Rapier,* 1892, 143 U.S. 110, 12 S.Ct. 374, 36 L.Ed. 93, and, in conjunction with the Necessary and Proper Clause, Art. I, § 8, cl. 18, is more than adequate constitutional authority for the postal regulations which Gliatta has violated.

■ Moreover, the Property Clause, Art. IV, § 3, cl. 2, gives Congress the power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." The Supreme Court has explicitly held that the presence or absence of federal jurisdiction under the Exclusive Jurisdiction Clause "has nothing to do with Congress' powers under the Property Clause." *Kleppe v. New Mexico,* 1976, 426 U.S. 529, 542–43, 96 S.Ct. 2285, 2293, 49 L.Ed.2d 34.[10] Beyond doubt, the Property Clause authorizes the enactment and enforcement of regulations which, like those at issue in this case, are designed to maintain safety and order on government property. *See United States v. Brown,* 8 Cir., 1977, 552 F.2d 817, 821–22, *cert. denied,* 1977, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266; *Robbins v. United States,* 8 Cir., 1922, 284 F. 39; *United States v. Matherson,* E.D.N.Y., 1973, 367 F.Supp. 779, *aff'd mem.,* 2 Cir., 1974, 493 F.2d 1399; *see also McVay v. United States,* 5 Cir., 1973, 481 F.2d 615.

Crossing the yellow stripe, driving with excessive speed, ignoring the officer's commands, on property that blended into Miami property, turned out to be, not Florida, but Federal offenses for which appellant was fairly tried, convicted, and sentenced.

AFFIRMED.

---

**9.** *See* note 5, *supra.*

**10.** "Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause." 426 U.S. at 543, 96 S.Ct. at 2293.