UNITED STATES of America, Plaintiff,

v.

George Charles KING, Defendant.

Magistrate No. 91–0008A.

United States District Court,
D. New Jersey.

Oct. 21, 1991.

Michael Chertoff, U.S. Atty. by Robert A. Farkas, Asst. U.S. Atty., Trenton, N.J., for plaintiff.

Frederick W. Klepp, Cherry Hill, N.J., for defendant.

OPINION

JEROME B. SIMANDLE, United States Magistrate Judge:

The United States has charged that defendant Charles King committed a petty offense within the territorial jurisdiction of the United States by engaging in a course of alarming conduct intending to seriously annoy or alarm his victim in disregard of N.J.S.A. 2C:33–4(c), in violation of the Assimilated Crimes Act at 18 U.S.C. § 13(a).

At trial, the defendant moved to dismiss for lack of federal criminal jurisdiction, alleging that the incident did not occur, as 18 U.S.C. § 13(a) requires, within a place "reserved or acquired [by the United States] as provided in section 7 of this title."

Section 7 of Title 18 defines the "special maritime and territorial jurisdiction of the United States." Specifically, subsection 7(3) defines such jurisdiction to include:

Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

The jurisdictional issue that must be considered is whether the privately-owned parking lot, a part of which has been leased by the U.S. General Services Administra-

tion for use of federal employees, where the underlying incident allegedly occurred, lies within the criminal jurisdiction of the federal courts under the Assimilated Crimes Act, 18 U.S.C. § 13(a).

The area in question is a parking lot consisting of 69 spaces, located at the corner of Merchant and Stockton Streets in Trenton, New Jersey, about two short blocks from the U.S. Courthouse there. The lot is privately owned by Nexus Properties, and it was partially leased to the U.S. General Services Administration by lease dated August, 1990, continuing thereafter month-to-month at a monthly rental. The federal agency leases 61 of the spaces for parking by federal employees, while the State of New Jersey leases the 8 remaining spaces for state employee parking. The lot is enclosed by a chain link fence topped with barbed wire, it has one entrance, and it is regularly patrolled by a guard employed as a Court Security Officer by the U.S. District Court. In the present case, the victim of the alleged offense, Joann Mattis, is a federal court employee who was returning to her vehicle parked in the lot where she was repeatedly verbally accosted by the defendant on June 20, 1991, in violation of the New Jersey Code of Criminal Justice at N.J.S.A. 2C:33–4(c).

The United States has the burden of proving that federal jurisdiction exists. Under the definition of subsection 7(3), above, there are two ways that such land may be within federal criminal jurisdiction. First, the property can be "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof." Alternatively, the property can be "any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

The United States alleges that this court has jurisdiction because the federal government has exercised practical usage and dominion over the leased land, meeting the requirements of 18 U.S.C. §§ 13 and 7, citing *United States v. Schuster*, 220

F.Supp. 61 (E.D.Va.1963); *United States v. Erdos*, 474 F.2d 157 (4th Cir.1973); and *United States v. Blunt*, 558 F.2d 1245 (6th Cir.1977). In *Schuster*, the court held that private property leased by the United States and occupied as part of a naval base in Virginia comes within the concurrent criminal jurisdiction of the United States; the court noted that the Virginia legislature had given statutory consent to the concurrent jurisdiction of the United States over lands purchased or leased by the federal government, and further that the United States—acting through the Navy—had accepted concurrent jurisdiction over the property by written notice to the Governor as required by federal law at 40 U.S.C. § 255. 220 F.Supp. at 62.

The "practical use and dominion" test emerged in the *Erdos* case, above, in which federal jurisdiction was found to exist over a crime committed by an American citizen at the United States embassy overseas. The United States leased the embassy itself from a private foreign owner. The court upheld a murder conviction holding that "the test ... is one of practical usage and dominion exercised over the embassy or other federal establishment by the United States government." *Erdos, supra,* 474 F.2d at 159. The *Erdos* court, however, was not interpreting the Assimilated Crimes Act. It was applying extraterritorial jurisdiction to a murder committed by a U.S. citizen against a fellow embassy employee within the embassy's walls. *Erdos* does not involve land within a state, but instead involves embassorial land lying outside the jurisdiction of the host nation. This land is not subject to the dictates of 40 U.S.C. § 255, and the *Erdos* rationale is thus inapplicable to the instant matter.

Such "practical use and dominion" was also found to exist in *Blunt*, above, where the petitioner, a prisoner convicted of assault with a deadly weapon with the intent to do bodily harm while imprisoned at the Federal Correctional Institution at Lexington, Kentucky, in violation of 18 U.S.C. § 113(c), contested federal criminal jurisdiction by noting that the federal government had transferred approximately half of the acreage it had owned to the county for the

establishment of state parks. He then argued that since the facility manager testified that he did not possess personal knowledge of the deeds transferring ownership of the land, the government did not adequately prove that the land retained by the United States was that portion upon which the assault occurred. Since the facility manager did testify that no part of the Federal Correctional Institute had been conveyed, and it was undisputed that the assault occurred within the federal prison itself, the Sixth Circuit concluded that the trial court could have taken judicial notice of federal criminal jurisdiction under the *Erdos* test. Since *Blunt* involved a prosecution pursuant to a federal criminal statute and not pursuant to the Assimilated Crimes Act, its rationale does not control the instant matter.

■ Against this background, we determine whether the United States has shown that the leased parking lot lies within federal criminal jurisdiction under either jurisdictional basis. First, is the parking lot a land "reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof"? This court agrees with the United States that leased property can satisfy the "reserved or acquired" clause, as in *United States v. Schuster, supra,* and cases cited therein. That the parking lot is "for the use of the United States" is also apparent, as the 61-space portion leased by the United States is solely for the use of federal employees while in the course of their employment.

But the United States has not shown it exerted "exclusive or concurrent jurisdiction" over this leased lot, for two reasons. First, the United States has not exercised practical dominion over the parking lot; it has leased only a portion of the lot and has no control over the remainder of the parcel, which is leased to a State agency. The month-to-month lease, apparently terminable at will by the private owner, lacks the sustained control which is an important aspect of dominion.

Second, and more importantly, the government has not shown that it has exerted such jurisdiction by filing the requisite notice with the Governor under 40 U.S.C. § 255, which has been required by Congress since 1940, as discussed below. Under that statute, the authorized officer of the acquiring federal agency—here, the General Services Administration—must notify the Governor of the state that the federal government is taking concurrent jurisdiction over the land. In *Schuster,* the giving of such notice by the Navy to the Governor of Virginia was of crucial importance, and the court was able to find that 40 U.S.C. § 255 had been satisfied. The statute reads in relevant part:

> The head or other authorized officer of any department ... of the Government ... may indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.

Where the federal government has not filed an acceptance of jurisdiction, section 255 establishes the conclusive presumption that no jurisdiction exists. The statute, enacted in 1940, applies to all lands acquired after 1940,[1] *see Pratt v. Kelly,* 585 F.2d 692 (4th Cir.1978) (no federal jurisdiction over civil action between non-diverse parties concerning an auto accident that occurred on the Blue Ridge Parkway, a federally owned highway, where the state of Virginia had expressly reserved jurisdiction over civil cases arising from use of the highway and the federal government never sought concurrent jurisdiction pursuant to 40 U.S.C. § 255); *see also Dupuis v. Submarine Base Credit Union, Inc., et al.,* 365 A.2d 1093, 1095, 170 Conn. 344 (1975) (Naval Credit Union not exempt from local zoning laws where federal government had acquired land after 1940 and had not filed

---

1. The requirement that a notice of acceptance be filed with the Governor does not apply to pre–1940 acquisitions. *Markham v. United*   *States,* 215 F.2d 56 (4th Cir.), *cert. denied,* 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1954).

notice of acceptance of jurisdiction with the governor, and "[i]n the absence of an acceptance of either partial or exclusive jurisdiction the United States' possession of lands is that of an ordinary proprietor."[2]) The government has not complied with the mandate of 40 U.S.C. § 255 with respect to the leased parking lot at issue here.

■ Under the alternate theory of section 7(3), above, has the federal portion of the parking lot been "purchased or otherwise acquired by the United States by consent of the legislature of [New Jersey] for the erection of a fort, magazine, arsenal, dockyard, or other needful building"? As noted above, the leasing of property satisfies the "otherwise acquired" clause. Similarly, under New Jersey law, the State has given broad consent for federal acquisition of New Jersey lands for federal buildings. Thus, the law provides at N.J.S.A. 52:30–1, in relevant part:

> The consent of this state is hereby given to the acquisition by the United States by purchase, condemnation or otherwise, of any land within this state for the erection of dockyards, custom house, courthouses, post offices or other needful buildings.

This means that the State of New Jersey has consented to the federal government's acquisition of land for federal courthouse purposes, logically including leasing of land for use as a federal court parking lot. Such a parking lot, being part of the operation of the federal courthouse even though two blocks away, is within the contemplation of both New Jersey's broad consent to jurisdiction under N.J.S.A. 52:30–1 and within the "needful building" clause of 18 U.S.C. § 7(3).

The sole remaining jurisdictional question is whether the United States is required to file the notice of acceptance of jurisdiction with the Governor under 40 U.S.C. § 255, above, under the "purchased or otherwise acquired" clause of subsection 7(3). Shortly after section 255 was enacted in 1940, the Supreme Court was called upon to interpret it in *Adams v. United States*, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed.

1421 (1943). In *Adams*, the defendant soldiers had been convicted of raping a civilian woman at Camp Claiborne, Louisiana, a military camp to which the government had acquired title at the time of the crime. Defendants argued that since the federal government had not complied with the then-recently enacted 40 U.S.C. § 255 by filing a notice of jurisdiction with the governor, the federal government did not have concurrent criminal jurisdiction over their alleged crime. The Court found that section 255 created a method of federal acceptance of jurisdiction, so that all persons could know whether the United States was asserting "no jurisdiction, concurrent jurisdiction, or exclusive jurisdiction" over its acquired land. *Id.* at 314, 63 S.Ct. at 1123 (citation omitted). The Court held that such notice was required to be given in order to vest either exclusive, partial or concurrent jurisdiction over such acquired land. *Id.* at 315, 63 S.Ct. at 1123. The court therefore overturned the convictions.

Although the issue has arisen infrequently, the various Courts of Appeals have consistently interpreted section 255 as requiring the head of the acquiring federal agency to give notice of acceptance of jurisdiction to the Governor of the State where the acquired land is situated, in order to thereafter assert federal jurisdiction over the land pursuant to the Assimilated Crimes Act. *United States v. Gliatta*, 580 F.2d 156 (5th Cir.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978) (defendant was convicted for passing double yellow line and disobeying post office security officer; court affirmed principle of *Adams* and would have dismissed for lack of jurisdiction since federal government did not comply with 40 U.S.C. § 255, but held that a subsequently enacted federal statute authorized concurrent jurisdiction for postal security officers without requiring the federal government to comply with 40 U.S.C. § 255); *United States v. Johnson*, 426 F.2d 1112, 1115 (7th Cir.), *cert. denied*, 400 U.S. 842, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970) (jurisdiction recognized because the land involved had been acquired by the federal government in 1918, twenty-two years pri-

---

**2.** The rationale of the Connecticut Supreme Court in this matter demonstrates the important concepts of comity and federalism underlying this jurisdictional requirement.

or to the enactment of 40 U.S.C. § 255, and "[t]he presumption against the acceptance of jurisdiction in that statute is applicable only to land acquired subsequent to the 1940 amendment."); *Pratt v. Kelly, supra.*

The various district courts also agree that Congress intended that federal acceptance of jurisdiction over lands acquired after 1940 may be indicated solely by the giving of notice of acceptance under section 255. *Fountain v. New Orleans Public Service, Inc.*, 265 F.Supp. 630, 638 (E.D.La.1967) (if government did not acquire land in question prior to 1940, "express and positive acceptance [is] required, in the absence of which rejection is conclusively presumed") (citations omitted); *United States v. Schuster, supra.* This criminal case, arising under the Assimilated Crimes Act, is not governed by the principle of inherent federal jurisdiction, arising under the property clause of the constitution, empowering the government to regulate access and use of its own property under federal law.[3] No case has been found that would dispense with the section 255 requirement of filing acceptance of jurisdiction for property acquired after 1940 in an Assimilated Crimes Act case, and this court is constrained to agree.

It is apparent, then, that Congress has limited the power of the United States to prosecute criminal offenses under the Assimilated Crimes Act, 18 U.S.C. § 13(a), to crimes committed upon places within the special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. § 7. Under § 7(3), the United States has the burden of proving that it has acquired jurisdiction over such a place—here, the privately-owned parking lot—where a portion is leased to the government month-to-month. Although the court recognizes that this leasehold interest may be sufficient to support the proposition that this land has been "acquired" by or for use of the United States, this court holds that the United States has not accepted jurisdiction over this property in the exclusive manner prescribed by Congress for property acquired after 1940, that is, pursuant to 40 U.S.C. § 255, and that this property does not lie within the special maritime and territorial jurisdiction of the United States.

Accordingly, the court holds that the United States has not established that this court has criminal jurisdiction over the rented parking lot at Merchant and Stockton Streets in Trenton, New Jersey, for purposes of the Assimilated Crimes Act in 18 U.S.C. § 13(a). The criminal complaint must be dismissed for lack of federal jurisdiction, without prejudice to prosecution by local authorities.

3. This case does not involve the United States' power to exclude others from its buildings and lands by enforcement of federal trespass law. The United States has the power to protect and secure its own property, derived from article IV, sec. 3, clause 2 of the Constitution, whether or not the Government has filed an acceptance of jurisdiction under 40 U.S.C. § 255. *United States v. Seward*, 687 F.2d 1270 (10th Cir.1982), *cert. denied sub nom. Ahrendt v. United States*, 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983) (Government did not have to file an acceptance of jurisdiction to prosecute trespassers at nuclear facility because the government's jurisdiction to protect its property against the trespass arose from the property clause of the constitution, art. IV, § 3, cl. 2); *Gliatta, supra; United States v. Thompson*, 41 F.Supp. 13 (E.D.Wash.1941) (court cites the recently-enacted section 255, but finds that even in the absence of filing notice of acceptance of jurisdiction thereunder, the government had the power to forbid the defendant from grazing cattle on federal acquired land under the property clause of the constitution, art. IV, § 3, cl. 2). The issue in the present case, whether the United States has acquired criminal jurisdiction over the place of commission of a crime for purposes of 18 U.S.C. § 13(a), transcends the issue of the sovereign's inherent power to exclude others or regulate use of its property under federal property management regulations. In more concrete terms, the federal government may lack power to enforce the state's criminal law under the Assimilated Crimes Act in a place where it has not filed an acceptance of jurisdiction, and yet exercise its regulatory authority to exclude persons from the same property or to regulate others' use of the property. This Opinion does not address the United States' power to regulate entry and use of its property by means other than Assimilated Crimes Act criminal prosecution, such as by the enforcement of non-criminal regulations pertaining to entry, use, parking and the like.