UNITED STATES of America,
Plaintiff,

v.

Kevin GRANT, Defendant.

No. CR 03–43–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

May 4, 2004.

Kris A. McLean, Missoula, MT, for U.S.

John Rhodes, Melissa Harrison, Missoula, MT, for defendant.

## ORDER

MOLLOY, Chief Judge.

### I. INTRODUCTION

On Nov. 5, 2003, Kevin Grant pled guilty without a plea agreement to eight counts of willfully setting fire to the public domain. He appeared for sentencing on Feb. 20, 2004. That morning, he filed a brief raising the question of whether the federal government has jurisdiction over these crimes, as they were all set on state lands.

Sentencing was continued until the court could determine whether it has jurisdiction to proceed. Oral argument was held on the Defendant's motion to withdraw his plea or dismiss the indictment on April 29, 2004. Having heard the parties' presentations of evidence on the applicable facts and law, in my view the motion to dismiss should be granted for the reasons set forth below. In doing so, I am not allowing Grant to withdraw his plea.

### II. FACTUAL AND PROCEDURAL BACKGROUND

The summer of 2003 was hot and dry. After several years of drought, the fire danger was high. Kevin Grant, a volunteer fireman for the Thompson Falls Rural Fire Department, surreptitiously started nine separate grass fires between July 6 and July 27, 2003.

Rick Cavill, Assistant Fire Management Officer of the Lolo National Forest, testified that all of the fires set by Grant were on state lands, within the jurisdiction of the Cooperative Fire Management Agreement. He testified that the Forest Service is the primary responder for fires in this area. He testified that one of the fires was only seven (7) feet from federal land.[1] He also testified that while no fire was on federal land, every fire threatened federal land because of the severe conditions.

A grand jury indicted Grant on August 22, 2003, of one count of committing arson on public lands, 18 U.S.C. § 844(f)(1), and eight counts of willfully setting fire to lands within the partial or concurrent jurisdiction of the United States, in violation of 18 U.S.C. § 1855.

On October 30, 2003, Grant signed an Acknowledgment of Rights Waived by Plea of Guilty, in which he stated, "I willfully and without authority set fire on timber underbrush, or grass, or other inflammable material upon the public domain of lands under the partial concurrent, or exclusive jurisdiction of the United States in violation of 18 U.S.C. § 1855." Waiver ¶ 11. On October 31, 2003, the government moved to dismiss count I of the Indictment because "a recent survey of the United States Forest Service has determined that the fire alleged in Count I burned to within 7 feet of land owned by the United States and administered by the United States Forest Service, but that none of the fire alleged in Count I actually burned on federal land." Because federal land is an element of the crime that the government could not prove, it stated "[t]he interests of justice require that Count I be dismissed." Motion to Dismiss

(filed Oct. 31, 2003). The Court granted the motion on November 4, 2003.

18 U.S.C. § 844(f)(1) provides:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

In contrast, 18 U.S.C. § 1855 provides:

Whoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other inflammable material upon the public domain or upon any lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United States, or under contract for purchase or for the acquisition of which condemnation proceedings have been instituted, or upon any Indian reservation or lands belonging to or occupied by any tribe or group of Indians under authority of the United States, or upon any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be fined under this title or imprisoned not more than five years, or both.

## III. LEGAL ANALYSIS

■ The issue presented by the Defendant's motion is whether the Court has jurisdiction under 18 U.S.C. § 1855 for

---

**1.** It appears this was the Flatiron I fire, which the government initially thought was on federal land and charged under 18 U.S.C. § 844(f)(1). Once it discovered the fire was actually on state land, the government con-

cluded it did not have jurisdiction under § 844 and moved to dismiss that count of the indictment. Motion to Dismiss Count I of the Indictment (filed Oct. 31, 2003); Order granting dismissal (filed Nov. 4, 2003).

fires that were set on state lands. Under the plain language of the statute, the Court has jurisdiction if the lands were under the "partial, concurrent, or exclusive jurisdiction" of the United States.

Federal courts have jurisdiction over crimes committed under 18 U.S.C. § 1855 if the United States has partial concurrent, or exclusive jurisdiction over the lands that were set on fire. What is not readily apparent is what is meant by the phrase "partial, concurrent, or exclusive jurisdiction."

The government contends that the Defendant has already admitted to the facts underlying jurisdiction, and cannot now dispute those facts. It argues that it has partial or concurrent jurisdiction under the Cooperative Fire Management Agreement (CFMA), which addresses logistical issues in fighting wildfires such as which agency responds to which fires, who is in charge, who pays for what, etc. *See* Master Agreement, Exhibit 2 to Government's Response to Defendant's Motion to Withdraw Guilty Plea. Finally, it argues that federal courts have jurisdiction over fires that are "very near" federal lands, citing *United States v. Alford*, 274 U.S. 264, 47 S.Ct. 597, 71 L.Ed. 1040 (1927), and *United States v. Lindsey*, 595 F.2d 5 (9th Cir.1979).

The Defendant argues that the plain language of 18 U.S.C. § 1855 does not apply to state lands, that the CFMA cannot create criminal jurisdiction in this court, and that even if jurisdiction could be created by contract, this particular contract fails to do so. Finally, he argues that the "very near" language of *Alford* and *Lindsey* was statutory, and that in the absence of such language in the statute, the Court cannot insert it.

### A. "Very Near" Federal Lands

*Alford* and *Lindsey* establish that Congress has the constitutional authority to regulate activities "very near" federal

lands as a means of protecting federal lands. Alford was indicted under what is now 18 U.S.C. § 1856, which prohibits "unattended and unextinguished" fires that are "in *or near*" lands over which the United States has jurisdiction. *See* 18 U.S.C. § 1856 (emphasis added). The U.S. Supreme Court in *Alford* determined that Congress had the authority under the Constitution to "prohibit the doing of any acts upon privately owned lands that imperil the publicly owned forests." 274 U.S. at 267, 47 S.Ct. 597. Grant, in contrast, was indicted under 18 U.S.C. § 1855, which lacks the "or near" language of § 1856.

*Lindsey* is no more helpful to the government. Lindsey was camped below the high water mark on the Snake River, and was therefore on state land. 595 F.2d 5 (9th Cir.1979). He was charged under regulations that had been promulgated pursuant to 16 U.S.C. § 551, which authorizes the Secretary of Agriculture to "make provisions for the protection against destruction by fire and depredations upon the public forests and national forests .... [and] insure the objects of such reservations, namely to regulate their occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C. § 551. The regulation under which Lindsey was charged prohibited camping and building a fire without permits. 36 C.F.R. § 261.1(c).

Lindsey argued that because he was not on federal land, he could not be in violation of a regulation governing federal land. The district court agreed and dismissed the complaint. The Ninth Circuit reversed, stating that the government had the constitutional authority to regulate conduct that threatened federal land under the Property Clause. U.S. Const. Art. IV, sec. 3, cl. 2. Notably, Lindsey was charged under a regulation that explicitly applies when an "act or omission affects,

threatens, or endangers property of the United States administered by the Forest Service." 36 C.F.R. § 261.1(a)(2). The holding in *Lindsey* simply establishes that the regulation did not overreach the government's constitutional authority; it does not answer the question of whether the government has jurisdiction in the absence of a statute or regulation that criminalizes conduct on state land.

*Alford* and *Lindsey* establish that Congress has the authority to regulate the setting of fires on non-federal land in order to protect federal land. But if 18 U.S.C. § 1855 does not reach conduct on lands that are "very near" federal lands, it makes no difference that Congress *could have* made these fires federal crimes. What matters is whether Congress in fact made these fires a federal crime. The government *would* have the authority to charge Grant under 18 U.S.C. § 1856, or 16 U.S.C. § 551 and 36 C.F.R. § 261.1— both of which would be misdemeanors. But without an explicit statutory basis, this Court does not have jurisdiction over a crime that was committed on state lands.

**B. "Partial, Concurrent, or Exclusive Jurisdiction"**

Neither party directly addresses the meaning of "partial, concurrent, or exclusive jurisdiction," used in 18 U.S.C. § 1855. The meaning of that phrase is crucial. Understanding the type of jurisdiction referred to in the statute sheds important light on whether the jurisdiction created by the CFMA is sufficient to create criminal jurisdiction in this Court, or whether the statute can be interpreted as covering lands that are "very near" federal lands.

■ The Supreme Court has held that "exclusive jurisdiction" is the same as "exclusive Legislation," as that term is used in Article 1, section 8, clause 17 of the U.S. Constitution, sometimes referred to as the federal enclave clause. *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652, 50 S.Ct. 455, 74 L.Ed. 1091 (1930). In other words, "jurisdiction" is the power to make rules and regulations, or to legislate. The federal government has the power under the Constitution to make rules prohibiting the setting of fires on non-federal land. It has exercised that authority in 18 U.S.C. § 1856 and the regulations promulgated under 16 U.S.C. § 551.

Under this reading of "jurisdiction" in § 1855, the government would have partial or concurrent jurisdiction over state lands. But this reasoning is flawed for two reasons. First, it is circular. In asking whether Congress criminalized this conduct, the answer is yes because Congress *could* criminalize this conduct.

More important, however, is 40 U.S.C. § 3112. If the United States acquires an interest in property, it does not automatically acquire jurisdiction over it; it must file a notice with the state stating the extent of jurisdiction it is accepting. 40 U.S.C. § 3112 (formerly 40 U.S.C. § 255). "It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section." Section 3112 applies to all lands in which the United States obtains an interest unless the interest was acquired prior to 1940, when the statute was enacted. *Markham v. United States*, 215 F.2d 56 (4th Cir.1954).

In the landmark case interpreting § 3112, *Adams v. United States*, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943), the Supreme Court held that the federal court had no criminal jurisdiction over a rape committed at a military camp because the federal government had not accepted jurisdiction as required under the predecessor to § 3112, 40 U.S.C. § 255. As explained by the Supreme Court, § 255 "created a definite method of acceptance of

jurisdiction so that all persons could know whether the government has obtained 'no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction.' " *Id.* at 314, 63 S.Ct. 1122.

 Because jurisdiction over lands that once belonged to a state implicates state-federal relations, the state must consent to the cession of jurisdiction, and the federal government must give notice that it is accepting jurisdiction. *Id.* If these steps are not followed, the federal government does not obtain jurisdiction over these lands—its interest is that of a proprietor. *United States v. Gliatta,* 580 F.2d 156 (5th Cir.1978). Thus, a federal district court did not have criminal jurisdiction over a private parking lot leased by a federal agency because the government had not evidenced acceptance of jurisdiction via a § 255 notice. *United States v. King,* 781 F.Supp. 315 (D.N.J.1991).

Here, of course, the lands at issue are not owned or leased by the United States. In the absence of even a minimal proprietary interest, and no expression of intent by either Congress or the Montana legislature for the federal government to exercise legislative power over these lands, the federal government does not have "partial, concurrent or exclusive jurisdiction" over them.

### C. Impact of the CFMA

As noted earlier, the import of the phrase "partial, concurrent, or exclusive jurisdiction" illustrates why criminal jurisdiction cannot be created through an agreement to cooperatively fight fires. The CFMA creates "suppression jurisdiction," which allows the United States to suppress fires on non-federal lands. However, "suppression jurisdiction" is a far cry from criminal jurisdiction, which must be statutorily created, constitutionally authorized, and explicitly consented to by both the state and federal governments.

## IV. CONCLUSION

Because 18 U.S.C. § 1855 does not expressly reach conduct on non-federal lands, this Court lacks jurisdiction. That the fires were "very near" federal land indicates the government has authority to charge Grant under statutes or regulations that reach that conduct; however, this Court cannot insert language omitted by Congress into a statute, especially language that is necessary to create jurisdiction. The CFMA creates "suppression jurisdiction" over wildfires. It does not, and cannot, create federal criminal jurisdiction.

Accordingly, IT IS HEREBY ORDERED that the Motion to Vacate Sentencing (Dkt.# 38) is GRANTED, and the indictment is dismissed without prejudice.

The Clerk shall notify the parties of the entry of this order dismissing the indictment for lack of federal criminal jurisdiction.